[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a change of zone, and presents the unusual situation where the zone change was made so that the use under a previously approved site plan became a permitted use in the zone. The plaintiffs claim that this exceeds the authority of a zoning commission, and that the approval here was based upon illegal receipt of information after the public hearing to correct noncompliance with the prior site plan approval.
The application requested a change of zone for a parcel of land at 554 Boston Post Road in Milford from the general industrial zone (GI) to the general business zone (GB). The CT Page 384 owners of the subject property, Arnold Peck and Gregory Field, known as Courtyard Associates, obtained site plan approval to construct a building consisting of mixed retail and residential uses on the property in 1986. No appeal was taken from that approval. Subsequently several zoning permits and certificates of building compliance were issued in 1988 and 1989 for some of the 11 retail units on the first floor and 13 apartments on the second floor of the building shown in the site plan. The uses of the property allowed under the site plan are allowed in the GB zone, but a mixed retail and residential use building is not allowed in the GI zone, even though most of the uses in the GI zone are allowed in the GB zone. See sections 3.11.1 and 3.15.1 Milford Zoning Regulations. When the named defendant, the Planning and Zoning Board of Milford (hereafter called "the Board") approved the site plan application in 1986, both it and the applicant thought that the property was in the GB zone and that the uses approved under the site plan were permitted uses for the subject property. This application was filed when it was discovered that the property was still in the GI zone.
The subject property is on the Boston Post Road, also known as U.S. Route 1. A review of the record, including the zoning map, shows that most of the properties abutting the Boston Post Road are in a nonresidential zone. The properties along the Boston Post Road near the subject property are in several different nonresidential zone categories. While the subject property abuts other land in the GI zone, several nearby properties are in the GB zone. The general pattern along the Boston Post Road is to allow commercial and nonresidential development on both sides of the highway, with properties in residential zones abutting and to the rear of the commercial properties having frontage on Boston Post Road.
The zone change application was filed in November 1989. A public hearing was held on December 19, 1989. The applicants' attorney, Donald Blanchard, discussed the history of the property and the mistaken assumption that it was in the GB zone. He also claimed that the area had changed since it was zoned GI in 1972, that the mixed use approach was the best use for the subject property and that it was consistent with recommendations in the plan of development. The opposition claimed that the present use for multi-family units along with retail uses does not conform with the GI zone, and that the existing building has not been constructed in accordance with the previously approved site plan. Claims were also made that the existing CT Page 385 building does not have enough parking, that there were drainage problems, and that abutting property owners had no prior chance to make objections to the building since there was no public hearing on the site plan prior to its approval in 1986. A protest petition was also filed opposing the zone change. The petition was apparently signed by the owners of 20 percent or more of the area of the lots within 500 feet in all directions of the subject property. This required approval of the zone change by a two-thirds vote of all the members of the Board under section 8-3(b) of the General Statutes. (This is not an issue, since the application was unanimously approved by the Board). In rebuttal the applicants' attorney, Donald Blanchard, indicated that problems with the site plan and the parking and lighting on the subject property were being corrected.
The application came up for discussion at several committee meetings of the Board. The minutes of the meeting of January 22, 1990 state that the applicant had been informed of the items that had to be corrected to comply with the site plan, and that the zone change application should remain in committee until the problems with the site plan were corrected. At the February 26, 1990 meeting the o=i=g enforcement officer "stated that he spoke with the attorney for the property owners and that they are very interested in addressing all issues brought up at the public hearing." The Board decided that the zone change would remain in committee. When the application came up at a joint meeting of the zoning and regulations committee and the planning committee of the Board held on April 23, 1990, Attorney Blanchard attended the meeting and discussed how problems with the site plan were being corrected. He indicated that new lights had been installed, trees were about to be planted, a change in elevation might eliminate a retaining wall, and that drainage problems had been corrected. By letter of April 27, 1990 the city engineer recommended that the retaining wall shown along the rear of the property on the site plan should not be constructed. At the Board's next meeting held on May 1, 1990 the zone change application was unanimously approved. While the Board did not specifically assign reasons for the approval, comments from Board members indicated that the zone change should have occurred when the site plan was approved, the mixed residential and retail uses allowed in the GB zone are appropriate for the site as it is along the Boston Post Road, and that other properties in the area were zoned for general business. See Exhibits M and N. A legal notice of approval of the application was published on May 4, 1990, and the plaintiffs brought the appeal within 15 days after that as required by section 8-8 (b) of the General Statutes. CT Page 386
1. AGGRIEVEMENT
There are three plaintiffs in this action, Eugene Telker, James W. Spray and Florence Spray. The only plaintiff to testify at the trial was James W. Spray. His property abuts the property involved in the zone change application which is the subject of this appeal. Section 8 8(a) of the General Statutes confers standing to bring an appeal on any person who owns land which abuts or is within a radius of 100 feet of any portion of the land involved in the decision of a zoning commission. This special category is known as statutory aggrievement. Pierce v. Zoning Board of Appeals, 7 Conn. App. 632, 636. Prior to the enactment of this statute persons owning abutting or nearby land were not automatically aggrieved by the agency's decision and had to prove aggrievement. Walls v. Planning and Zoning Commission,176 Conn. 475, 476; Hughes v. Town Planning and Zoning. Commission, 156 Conn. 505, 508. This required proof of "classical aggrievement". Pierce v. Zoning Board of Appeals, supra, 636. To prove it, a plaintiff had to show compliance with a two-part test: first, he had to successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole; second, the party claiming aggrievement had to successfully establish that this specific personal and legal interest had been specially and injuriously affected by the decision. Walls v. Planning and Zoning Commission, supra, 478; Sheridan v. Planning Board,159 Conn. 1, 10; Schwartz v. Town Plan and Zoning Commission, supra, 25. A plaintiff must also show that he was aggrieved when the appeal was taken, Foran v. Zoning Board of Appeals,158 Conn. 331, 336, and that this interest has been maintained by continuing to own his property up to the time of the trial. Southbury v. American Builders Inc., 162 Conn. 633,634; Goldfeld v. Planning and Zoning Commission, 3 Conn. App. 172,177. Evidence at the trial did not show that Eugene Telker or Florence Spray are either classically or statutorily aggrieved. James W. Spray as an abutting property owner proved statutory aggrievement. While his property abuts land involved in the zone change, the Court agrees with the defendants that he did not prove classical aggrievement. The subject property was in the GI zone prior to the zone change granted by the Board. There is no setback requirement in the GI zone, which allows property to be used for numerous industrial uses. The GB zone has less impact on surrounding residential uses than the GI zone. While Spray may be able to prove that he is aggrieved by some actions of the Board, he has not proven that he was specially and CT Page 387 injuriously affected by the zone change. The building on the property is already in place, there is no indication that it is going to be . . . changed, and the uses allowed in a GB zone have less impact on surrounding properties than those allowed in a GI zone.
Even though the other plaintiffs have not proven aggrievement, the court can reach the merits of the appeal, since only one plaintiff has to be aggrieved. Nowicki v. Planning and Zoning Board, 148 Conn. 492, 495.
Defendants claim that the concept of statutory aggrievement under section 8-8 of the General Statutes is unconstitutional because it interferes with the judicial power vested in the courts under the separation of powers doctrine. It is also claimed that the legislature cannot confer standing by statute and create the right to appeal for persons who are otherwise not aggrieved and do not have standing to use the court system to decide their appeal. This same issue wee previously raised by the defendant Board as a special defense. A motion to strike the special defense was granted on September 27, 1990 on several grounds, including the fact that town boards and commissions do not have the standing to challenge constitutionality of statutes by the state legislature. Connecticut Association of Boards of Education, Inc. v. Shedd, 197 Conn. 554, 563. The still does not have standing to raise the issue at this time for the same reason. The defendant property owners applicants did raise a similar special defense in their answer. However, they have not briefed the issue. Issues which have been raised but not briefed are considered abandoned. Shaw v. Planning Commission, 5 Conn. App. 520,525; Ierardi v. Commission on Human Rights and Opportunities,15 Conn. App. 569, 585. Also, assertion of error without a citation of authority is considered abandonment of a claim. State v. Knighton, 7 Conn. App. 223, 226; Rodrigues v. Mallory Battery Co., 188 Conn. 145, 148-49. The claim was not contained in the pretrial brief of any of the defendants. It was raised orally during argument at the end of the trial of the appeal, but no citations were given to the Court by the defendants-property owners. Invalidation of statutes should not be done lightly by the court, and under the circumstances here it is not appropriate to decide whether the statutory aggrievement provisions in section 8-8 are unconstitutional.
The plaintiffs make the following claims in their appeal: (1) the approval of the zone change was an illegal correction of an improper action of the Board in approving CT Page 388 the site plan; (2) the zone change amounts to spot zoning; (3) the plaintiffs were deprived of their constitutional rights because the construction of the building was approved without a public hearing; (4) the Board illegally received evidence after the public hearing; (5) one Board member misstated the character of existing uses and permissible uses in the area; and (6) the Board members failed to perform their duties properly. These last two claims have no merit and do not warrant extended discussion. The last issue, made without any relevant legal citation, is basically a policy argument. The record shows that the Board was familiar with the area, the zone of the subject property and surrounding uses and what the zoning regulations allowed. There is no evidence that minor mistakes, if any, made in remarks by one Board member affected the result or misled the Commission. Views of individual agency members are not controlling. Schwartz v. Town Planning and Zoning Commission, 168 Conn. 285,290; Morningside Association v. Planning and Zoning Board, 162 Conn. 154, 156. Members of a zoning commission can rely on their personal knowledge of the area involved. Blaker v. Planning and Zoning Commission, 212 Conn. 471, 484; Burnham v. Planning and Zoning Commission, 189 Conn. 261,267.
2. ZONE CHANGE VALIDATING AN EXISTING USE
While it is true that some invalid actions made by an administrative agency cannot be cured by later ratification, the plaintiffs have not identified any Connecticut case which holds that a zoning commission cannot correct a prior mistake in the zoning of property by a subsequent zone change application conforming to statutory requirements. Whatever may have occurred previously, the applicant filed and the Board processed a zone change application meeting the statutory requirements in section 8-3 of the General Statutes. The plaintiffs' position amounts to a claim that where a zoning commission improperly approves a site plan for uses not allowed in the zone, that the commission can never rectify that mistake by changing the zone of the property to permit the uses allowed under the approved site plan. This is not the law. When a zoning commission acts on a zone change application, it acts in a legislative capacity. Primerica v. Planning and Zoning Commission, 211 Conn. 85,96; Parks v. Planning and Zoning Commission, 178 Conn. 657,660. While there was evidence in the record here as to a change in circumstances from when the property was originally zoned general industrial, a zoning commission acting in a legislative capacity does not require a change in circumstances in order to rezone property. Morningside Association v. Planning and Zoning Board, supra, 158; Loh v. CT Page 389 Town Plan and Zoning Commission, 161 Conn. 32, 39; Malafronte v. Planning and Zoning Board, 155 Conn. 205, 209. An error in the zoning map can always be corrected. Cleary v. Zoning Board, 153 Conn. 513. While a zoning commission no longer has to find a change of conditions or a mistake in the original zoning classification in order to make a zone change, Morningside Association v. Planning and Zoning Board, supra, 158, a mistake in the original zoning has always been a good reason for a zone change. Winslow v. Zoning Board,143 Conn. 381, 390; Damick v. Planning and Zoning Commission,158 Conn. 78, 84. See also Zoning Commission v. New Canaan Building Co., 146 Conn. 170, 175, recognizing the concept. A zoning commission can change its regulations "whenever time, experience and responsible planning for contemporary or future conditions reasonably indicate the need for a change." Parks v. Planning and Zoning Commission, supra, 660; Malafronte v. Planning and Zoning Board, supra, 209.
A zone change should be upheld if it passes a two part test: (1) it is in accordance with the comprehensive plan, and (2) it is reasonably related to the normal police power purpose in section 8-2. First Hartford Realty Corporation v. Plan and Zoning Commission, 155 Conn. 533, 541; Damick v. Planning and Zoning Commission, supra, 83, 84. Encouraging the most appropriate use of land in the municipality is a valid purpose under section 8-2 of the General Statutes. The discussions of the Board indicate that they considered the GB rather than the GI zone the most appropriate use of the subject property.
The comprehensive plan is a general plan to control and direct the use and development of property in a municipality or a large part of it by dividing it into districts according to the present and potential use of the properties. Morningside Association v. Planning and Zoning Board, supra, 161n; First Hartford Realty Corporation v. Plan and Zoning Commission, supra, 241. The comprehensive plan is found in the scheme of the zoning regulations themselves and the zoning map established pursuant to those regulations. Burnham v. Planning and Zoning Commission, supra, 267; Parks v. Planning and Zoning Commission, supra, 661. While the plan of development is advisory only as to zoning decisions of a zoning commission, First Hartford Realty Corporation v. Plan and Zoning Commission, supra, 542, a decision of a zoning commission will be upheld where it follows the plan of development. Zygmont v. Planning and Zoning Commission,152 Conn. 550, 553; Andrew C. Peterson, Inc. v. Town Plan and Zoning Commission, 154 Conn. 638, 641; Morningside Association v. Planning and Zoning Board, supra, 162. While the plan of development was not made part of the return of CT Page 390 record, comments in the record indicate that the proposed zone change was in accordance with the plan of development in addition to with the comprehensive plan. An examination of the zoning map shows that other properties in the area are in the GB zone. The Board within its discretion could conclude that a mixed use of retail and residential uses is a sensible transition zone between other commercial uses and abutting residential properties. The Board could also reasonably conclude that it was a mistake not to change the zone of the property earlier from GI to GB, and that the GB rather than GI is now a more appropriate zone for the subject property. The zone change also carries out the legislative policy that noncomforming uses should be made conforming where possible. Allin v. Zoning Commission, 150 Conn. 129, 134.
When a zoning commission makes a zone change, acting in a legislative capacity, it has very broad discretion, and the superior court on appeal should not substitute its judgment for that of the zoning commission, unless the appellant proves that the commission's action was clearly arbitrary or illegal. Burnham v. Planning and Zoning Commission, supra, 267; Calandro v. Zoning Commission, 176 Conn. 439, 440, 442. The question on appeal is not whether the court would have reached the same conclusion as the commission, but rather whether the record before the commission supports the decision reached. Burnham v. Planning and Zoning Commission, supra, 265. The Board could have changed the zone of the property whether or not there were any buildings on it when the zone change was approved. It is not precluded from granting the zone change merely because buildings were built on the property due to a mistaken impression as to how the property was zoned.
3. SPOT ZONING CLAIM
The plaintiffs claim that the zone change amounted to spot zoning because it was not an extension of an existing zone on abutting property. The fact that none of the abutting properties were in the GB zone does not, by itself, amount to spot zoning. While no abutting properties were in the GB zone, several other properties in the area had that designation. A successful spot zoning claim must meet a two part test: (1) the zone change concerns only a small area of land, and (2) the change is inconsistent with the comprehensive plan of zoning adopted to serve the needs of the community has a whole. Blaker v. Planning and Zoning Commission, supra, 483; Morningside Association v. Planning and Zoning Board, supra, 161; Malafronte v. Planning and Zoning Board, supra, 211. Zone changes which are in accordance with the comprehensive plan are not spot zoning. CT Page 391 Loh v. Town Plan and Zoning Commission, 161 Conn. 32, 38. Even though only one parcel was involved in the zone change, and it is not a large parcel of land, size alone is not controlling. There is also no requirement that a zone change must be an expansion or continuation of the zone of surrounding property. Since the zone change was consistent with the comprehensive plan, it was not spot zoning. See Spada v. Planning and Zoning Commission, 159 Conn. 192, 197,198 (spot zoning claim rejected for 4.62 acre parcel where zone change was consistent with the comprehensive plan). The Board could reasonably approve the zone change where it was in the interest of the community to do so and other properties in the area were in the GB zone. The elimination of nonconforming uses as a result of a zone change is not spot zoning. Allin v. Zoning Commission, supra, 133.
4. CLAIM OF DEPRIVATION OF CONSTITUTIONAL RIGHTS
The plaintiffs claim that they failed to have an adequate opportunity to object to the building on the subject property when it was approved in 1986 so that the Board's action in granting the zone change in 1990 was a deprivation of their constitutional rights to equal protection of the laws and due process of law. There are several problems with making that claim in this appeal. An administrative appeal should not be decided on constitutional issues when the appeal can be decided and relief can be given on nonconstitutional grounds. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 720; Maloney v. Pac, 183 Conn. 313,324. This case can be decided on a procedural, nonconstitutional ground.
The underlying claim for the constitutional challenge relates to the site plan which was approved in 1986, rather than the zone change in 1990 which is the subject of this appeal. Section 8-3 (g) of the General statutes allows a zoning commission to require in its zoning regulations that a site plan be filed to determine whether a proposed building, use or structure complies with the zoning regulations, but the statute does not require the zoning commission to hold a public hearing on a site plan application. The plaintiffs have also failed to identify any case which requires a land use agency to hold a public hearing any time that a permit is issued or approval given under land use regulations for use of property.
The record shows that the Board published a legal notice of approval of the site plan in July 1986. The plaintiffs could have appealed that decision under section 8-8 of the General Statutes at that time, but did not do so. Due CT Page 392 process requires that the procedure involved must be appropriate to the nature of the case. Hart Twin Volvo Corporation v. Commissioner of Motor Vehicles, 165 Conn. 42,45. Determination of the level of due process where an administrative agency proposes to take away a position, permit or license, depends upon whether and to what extent the agency's action deprives the claimant of a property right. Bartlett v. Krause, 209 Conn. 352, 362-367. There is no automatic procedural due process right to a public hearing to object to the development of someone else's property. Due process requires that an individual be given an opportunity for a hearing before he is deprived of any significant property interest. Schwartz v. Town Plan and Zoning Commission, 168 Conn. 20, 24. The approval of a site plan for someone else's property with or without a public hearing is not deprivation of a significant property interest. If an approved site plan does not meet the zoning regulations, neighboring property owners who can prove aggrievement can maintain an appeal under section 8-8 of the General Statutes. This provides adequate protection for whatever rights they may have. When a party has a statutory right of appeal from the decision of an administrative agency, he cannot, instead of appealing, bring an independent action to test the same issue which the appeal was designed to test. Carpenter v. Jones, 176 Conn. 581, 598; Country Lands Inc. v. Swinnerton,151 Conn. 27, 33. Moreover, a plaintiff cannot raise an issue in a zoning appeal that he could have raised in an earlier appeal from a decision of a zoning authority. Haynes v. Power Facility Evaluation Council, 177 Conn. 623, 630.
5. RECEIPT OF EVIDENCE AFTER THE PUBLIC HEARING
Some of the opposition to the zone change at the public hearing held on December 19, 1989 was to the building itself. Claims were made that it had not been constructed in accordance with the site plan approved in 1986. The zoning and regulations committee reviewed and discussed the zone change application at several meetings after the public hearing. At the meeting of January 8, 1990 it was pointed out that several items originally approved as part of the site plan, including a buffer area, retaining wall and lighting had not been completed. It was decided that the zone change application would remain in committee and all members should view the site. At the next meeting on January 22, 1990 one of the committee members indicated that the applicants had been informed of items that had to be done for the site plan. The committee decided that the zone change should remain in committee to make sure that the property owners corrected the problems with the site plan. The zone change application came up next at the committee meeting of February 26, 1990 CT Page 393 when the planner, Wade Pierce, informed the committee that the property owners had granted an extension of time for the application to be decided and that the property owners were interested in addressing all issues brought up at the public hearing. Since nothing had been done on the site plan, it was decided to retain the zone change application in committee.
A joint meeting of the zoning and regulations committee and the planning committee was held on April 23, 1990, and the applicants' attorney, Donald Blanchard, attended the meeting, presumably at the request of the Board or one of its committees. The opponents of the application were not given notice of and apparently did not attend the meeting. The minutes of the meeting show that discussion centered on lights in the rear of the property, trees to be installed and a retaining wall. Blanchard indicated that there had been a change in the elevation of the property, that a retaining wall might not be necessary and that drainage problems had been corrected.
The zone change application came before the full board on May 1, 1990. Some of the zoning and regulations committee members reported to the full Board what had occurred with the lighting, the retaining wall, drainage, catch basins and similar items immediately prior to the discussion on zone change itself. See Exhibit N, pages 2-6.
The plaintiffs claim that the Board improperly received evidence at the public hearing in the form of reports from the city engineer, John Casey, and information received from the applicants' attorney. Illegal receipt of evidence after the public hearing by a zoning agency can invalidate its action. Blaker v. Planning and Zoning Commission, supra, 478-480; Wasicki v. Zoning Board, 163 Conn. 166, 173, 174; Pizzola v. Planning and Zoning Commission, 167 Conn. 202,207, 208; Carlson v. Fischer, 18 Conn. App. 488, 500-503. In each of those cases additional information was offered by the proponents of an application to the land use agency after the public hearing. There is an exception to this rule where evidence is offered or information is supplied by the staff of the administrative agency, or officials and consultants retained by or required to report to the agency on compliance with municipal regulations. Hawkes v. Town Plan and Zoning Commission, 156 Conn. 270, 212; McCrann v. Town Plan and Zoning Commission, 161 Conn. 65, 77; Kyser v. Zoning Board of Appeals, 155 Conn. 236, 251; Yurdin v. Town Plan and Zoning Commission, 145 Conn. 416, 421. This exception allows assistance from staff and consultants providing the person making post-hearing comments to the agency has no interest in CT Page 394 the application. Kyser v. Zoning Board of Appeals, supra, 250, 251. The Board was allowed to receive information from the city engineer and the town planner concerning the subject property after the public hearing even though the plaintiffs could not challenge that information. Moreover, a post hearing report by a Board member on a nontechnical matter does not require an opportunity for rebuttal. Brookfield Plaza Limited Partnership v. Zoning Commission, 21 Conn. App. 489,494.
The Board concedes in its brief that the Board should not have received evidence from Blanchard as the applicants' attorney after the public hearing, but claims that this evidence was not prejudicial to the plaintiffs and should not invalidate the board's approval of the zone change. The applicants make similar claims and state that Blanchard merely addressed concerns raised by the Board members on issues relating to the site plan, and that his remarks were limited to lighting, drainage, planting of trees and the retaining wall shown on the site plan. Whether receipt of evidence after the public hearing invalidates the agency's action is a factual question, requiring consideration of the nature of the evidence presented, who presented it, the nature of the proceeding, and whether the application involved only one or a few properties, as opposed to a fairly large area. Illegally received evidence can be harmless error where the agency's actions are adequately supported by assigned reasons not based on the improper evidence. First Hartford Realty Corporation v. Plan and Zoning Commission,165 Conn. 533, 545. A material consideration is the role the improperly received evidence played in the agency's decision. Martone v. Lensink, 207 Conn. 296, 306; Henderson v. Department of Motor Vehicles, 202 Conn. 453, 460. Where evidence is improperly received after the public hearing, there is a rebuttable presumption of prejudice, and the burden shifts to the defendants to show that the evidence did not affect the outcome. Blaker v. Planning and Zoning Commission, supra, 480. There must be a showing of substantial prejudice resulting from the illegal receipt of evidence by the agency in order to reverse its decision. Carlson v. Fischer, supra, 503, 504; Connecticut Natural Gas Corporation v. Public Utilities Control Authority, 183 Conn. 128,139.
There has been no showing that the Board improperly received evidence on the application with the exception of the comments made by Attorney Blanchard on April 23, 1990. Blanchard did not intentionally and knowingly offer improper evidence on the zone change application, but was at the meeting to answer questions of the Board on deficiencies of CT Page 395 the previously approved site plan.
The Court agrees with the defendants that under some circumstances the evidence presented at the committee meeting on April 23, 1990 would not be substantially prejudicial to invalidate the Board's approval of the zone change at the subsequent meeting of May 1, 1990. However, that is not the case here. Concerns were raised at the public hearing about noncompliance of the existing building with the site plan. The only property involved in the zone change was the applicants' parcel which contained less than two acres of land. The public hearing was relatively short for a zone change application. Under normal circumstances a zoning commission would be expected to make a prompt decision, one way or the other, on the application. However, it is clear from the Board's records that it was not going to act on the zone change application until it cleaned up the problems with the prior site plan approval. The matter was kept in committee, and periodic reports were received as to progress on the claimed deficiencies raised at the public hearing. When the Board was not prepared to decide the application within 65 days after the public hearing, it requested and obtained a 65 day extension. See section 8-7d(a) C.G.S. It decided the application one day before the statutory extension ran out. Exhibit N, page 2. Seven members of the Board were present at the joint committee meeting of April 23, 1990 and heard Blanchard's comments. The Board's discussion at the May 1, 1990 meeting also shows that whether the problems with the site plan were resolved was an important factor in whether the zone change would be approved. While it can be argued that the Board should not have tied the site plan and the zone change together, the record clearly shows that it did so even though compliance with the site plan was not given as a reason for the zone change. Since a valid petition in opposition to the zone change had been filed, a two-thirds vote of the entire Board membership was required to pass the zone change application. Section 8-3 (b) C.G.S. The record suggests that there is a strong possibility that this approval would not have been obtained if the Board members had not been satisfied that the deficiencies with the site plan had been corrected. In Carlson v. Fisher, supra, 500-503, the submission of water drainage information by the applicant for a subdivision after 11 water drainage problems were raised at the public hearing was held to be a denial of the rights of applicants to question that additional evidence. In Blaker v. Planning and Zoning Commission, supra, 478, it was held that something as innocuous as the submission of data by the applicant's attorney on the issue of the number of votes required by the commission was grounds for invalidating the decision since CT Page 396 the opponents did not have an opportunity to rebut the evidence received. Under the circumstances here, post hearing statements made by the applicants' attorney on the site plan could not properly be received without allowing the opponents a reasonable opportunity to rebut the statements.
The appeal is sustained.
ROBERT A. FULLER, J.