[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the approval of a special exception and site plan for about 113 acres of land in Danbury. The subject property is located in the RA-20 and RA-80 zones. Instead of developing the property on separate lots, the special exception was proposed to allow fifty-one (51) dwelling units on the property as a cluster type of development, so that the land would be owned in common with individual ownership of the dwelling units. The applicant for the project, the defendant, Ralto Developers, Inc. (hereafter called "Ralto"), filed an application with the Danbury Planning Commission on March 2, 1989 for a special exception with a related site plan application. A public hearing was held on the proposal on April 19, 1989, and concluded on May 17, 1989. Documents were submitted after the public hearing by Ralto's agents, municipal officials and others to the Planning Commission, which is the basis for one of issues in this appeal. On June 20, 1990, more than one year after conclusion of the hearing, the defendant Commission approved both the special exception and site plan applications by separate 3 to 2 votes. The special exception was approved subject to sixteen (16) conditions. A legal notice of the Commission's decision was published on June 28, 1990, and the plaintiffs commenced this appeal on July 12, 1990, within the fifteen (15) day time limit in section 8-8(b) of the General Statutes.
There are four plaintiffs in this appeal. The plaintiffs, Sandra Meeker, Amos Turk and Steven Marlin, all own property which abuts the Ralto property which was the CT Page 6255 subject of the applications. Persons who own land which abuts or is within a radius of 100 feet of any portion of the land involved in the decision of the agency are considered statutorily aggrieved and have standing to take an appeal. Pierce v. Zoning Board of Appeals, 7 Conn. App. 632, 636. The fourth plaintiff, Tarrywile Neighbors for Sensible Development Association, has not proven aggrievement. However, only one plaintiff must prove aggrievement for the court to have subject matter jurisdiction over the appeal. Nowicki v. Planning Zoning Board, 148 Conn. 492, 495.
1. Procedures for special exceptions and site plans under the Danbury Zoning Regulations.
Several of the claims raised in the appeal question the procedures followed by the defendant commission and require consideration of the statutory procedures under the General Statutes and Danbury's land use regulations for processing special exceptions and site plans. Section 8-2 of the General Statutes authorizes the zoning commission of the municipality to enact zoning regulations which
 "provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values."
The zoning regulations of most Connecticut municipalities delegate the special exception or special permit approval function to either the zoning commission (or combined planning and zoning commission) with procedures governed by section 8-3(c), or to the zoning board of appeals which acts pursuant to sections 8-6(2) and 8-7 of the Connecticut General Statutes. Danbury is among a small number of Connecticut municipalities where the zoning commission delegates approval of special exceptions to the planning commission which in turn acts under section 8-26e of the General Statutes. As used in the zoning statutes, the terms "special permit" and "special exception" have the same meaning and can be used interchangeably. A.P. W. Holding Corporation v. Planning Zoning Board, 167 Conn. 182, 186; CT Page 6256 Beckish v. Planning Zoning Commission, 162 Conn. 11, 15. The Danbury zoning Regulations create a confusing distinction between these terms. A "special exception use" defined in section 1.S as "a use not allowed generally throughout a zone, but if controlled as to location, number, etc., and if considered to promote public health, safety and general welfare, may be permitted by the Planning Commission where provided for in this regulation." Special permit zones are defined in the same section and are limited to areas which are intended for use as a tavern, grill, restaurant or grocery store beer permit as governed by section 8.F of the Zoning Regulations for which there are additional restrictions or other special conditions requiring a special permit from the Planning Commission or Zoning Commission. The regulations do not define site plan. Section 3.0(1) also provides that the Planning Commission approves special exceptions and the Zoning Commission acts on special permits.
The general requirements for special exceptions are contained in section 3.0. Section 3.0(3) follows section 8-26e of the General Statutes by requiring a public hearing on a special exception. The Planning Commission must approve, disapprove, or approve the special exception with conditions within sixty-five days after the public hearing. Section 3.0(5) of the Zoning Regulations and section 8-26e of the General Statutes require the Planning Commission to decide the application within the time limits in section 8-26d. Subsection (a) of section 8-26d requires the Commission to decide an application within sixty-five days after completion of the public hearing, except that the applicant can consent to one or more extensions of the sixty-five day time limit "provided the total extension of any such period shall not be for longer than the original period as specified in this subsection."
If the Planning Commission approves a special exception, it must conform with all the requirements of the special exception regulation, and landscape requirements, parking and loading requirements and sign regulations. [Section 3.0(8) Danbury Zoning Regulations.] A special exception cannot be approved unless the planning commission finds that: (a) the proposed use will have no detrimental affect on present and future dwellings in the vicinity; (b) the proposed architecture, site plan and landscaping are in harmony with the character of the neighborhood; (c) no conditions will be created which adversely affect traffic, safety or the normal movement of traffic; and (d) no conditions will be created which harm the natural environment so as to jeopardize the public health or safety. [Section 3.0(9).] In addition, the Commission may impose conditions CT Page 6257 which will ensure compliance with section 3.0.
Cluster development is allowed with a special exception in the RA-8, RA-20, RA-40 and RA-80 residential zones. [Section 8.C.] A parcel of land developed under this section must have title held in single ownership, cooperative ownership or condominium ownership (except that a development may consist of detached one family dwellings with each single family lot individually owned). [Section 8.C.1.] While Ralto's proposal was for a condominium development with each unit individually owned and the balance of the property designated as common area, the regulation also allows small subdivision lots, privately owned, with common area space, recreation and conservation areas held in common ownership by the subdivision lot owners. While section 8.C is designated "regulations for cluster subdivision," subdivision approval by the Planning Commission under the Danbury Subdivision Regulations and Chapter 126 of the General Statutes is not required unless there is a subdivision of the land as defined in section 8-18 of the Connecticut General Statutes. ("Subdivision" means the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission for the purpose, whether immediate or future, of sale or building development. McCrann v. Town Plan Zoning Commission,161 Conn. 65, 70.) Accordingly, in order to obtain special exception and site plan approval, Ralto did not require subdivision approval from the Planning Commission. In those cases where the dwellings in a cluster development under section 8.C are proposed for separate lots, subdivision approval would be required. That is not the situation here, and the plaintiffs' claim that the Commission violated section 8-25 of the General Statutes by not requiring and approving a subdivision plan is rejected. Even though the Planning Commission grants special exceptions in Danbury, when reviewing a cluster condominium project it is governed by sections 3.0 and 8.C of the Zoning Regulations. The Planning Commission is delegated this function by the zoning Commission under the Zoning Regulations, as allowed by section 8-2 of the General Statutes.
One of the requirements of the Zoning Regulations is that "complete site plans in accord with Section 3.P and architectural plans must be submitted and approved by the Planning Commission prior to the issuance of a special exception." [Section 8.C.6.] The site plan requirements are contained in section 3.P which states that prior to the issuance of a zoning permit for all special exception uses, a site plan must be submitted to and approved by the Planning Commission. [Section 3.P(1), Danbury Zoning Regulations.] CT Page 6258 Section 3.0(3) requires the site plan to be submitted at the time of the special exception. A complete site plan was not submitted until after the public hearing. The site plan requirements in section 3.P are extensive.
2. Requirement to file copy of special exception application with inland wetlands agency.
The plaintiffs claim that the defendants failed to comply with section 8.3c of the General Statutes because Ralto failed to file an application with the Environmental Impact Commission, the Inland Wetlands Agency for the City, on or before the date the special exception application was filed with the Planning Commission. Section 8-3c(a) provides:
 "If an application for a special permit or special exception involves an activity regulated pursuant to sections 22a-36 to 22a-45, inclusive, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations no later than the day the application is filed for a special permit or special exception."
Even if the special exception involved a regulated activity, the record does not show noncompliance with this statute. Where the statute applies, it requires the applicant to "submit an application" (presumably a regulated activities permit application) to the inland wetlands agency on the date the special exception application is "filed." The record indicates that the application to the Environmental Impact Commission and the special exception application were both dated March 2, 1989, even though the wetlands application was stamped as received by the Environmental Impact Commission on March 12, 1989. The statute is directed to delivery of the applications to the two agencies rather than the date of official receipt of the applications under sections 8-7d(c) and 22a-42a(c) of the General Statutes.
 I
In addition, applications to a planning commission for special exceptions are governed by section 8-26e, which does not have a provision similar to section 8-3c for applications for special exceptions to a zoning commission, so filing of an application with the inland wetlands agency was not required as part of the special exception process. CT Page 6259
Finally, consideration of the purpose of the requirement for a simultaneous application to the inland wetlands agency, as contained in section 8-3c and some other statutes, indicates that it is directory only and is intended to coordinate the filing and processing of multiple applications for the same land use project, so that review by the inland wetlands agency of possible regulated activities occurs at the same time or prior to other required permits and approvals. This purpose is not impeded in any way if an application for a regulated activities permit is filed with the inland wetlands agency a few days after a special exception application is filed with another agency. Time limits in a statute are considered directory rather than mandatory where the time limit is not of the essence of the thing to be accomplished or, in other words, where it relates to a matter of convenience rather than of substance. Zoning Board of Appeals v. Freedom of Information Commission,198 Conn. 498, 503; Donohue v. Zoning Board of Appeals,155 Conn. 550, 554 Ruotolo v. Inland Wetlands Agency, 18 Conn. App. 440,448.
3. Participation in the decision by new member of the Planning Commission.
There are two related claims in the appeal based on the fact that one of the commissioners who voted on the applications on June 20, 1990, was not a member of the commission at the time of the public hearing: (1) he was not familiar with the application, and (2) less than five members of the Planning Commission attended the public hearing in violation of section 3.0(3) of the Danbury Zoning Regulations. That provision reads as follows:
 "No special exception or special permit shall be approved until a public hearing is held by the Zoning Commission, or Planning Commission, or a committee thereof comprised of at least five (5) members of the Commission. . . ."
The Danbury Planning Commission consists of five regular members and two alternates. Commissioner Steven Zaleta was neither a regular nor alternate member of the Commission at the time of the public hearing on April 19, 1989 and May 17, 1989. Both the special exception and site plan were approved by a 3-2 vote on June 20, 1990, with Zaleta voting with the majority. The Commission's minutes show that only three commissioners were present on April 19, 1989, and only four of them attended on May 17, 1989. Zaleta was not present or a member of the Commission on either date. CT Page 6260
The quorum requirement for a Planning Commission is established by section 8-22 of the General Statutes, which states that "[a]ction of the commission shall be taken only upon the vote of a majority of its members." This coincides with the general concept of a quorum of a multiple member public agency. Ghent v. Zoning Commission, 220 Conn. 584,598. The five members of the Danbury Planning Commission, in June 1990, voted on the application and a majority of them, namely, three votes, would be sufficient to pass both resolutions, and if Zaleta could vote on the applications, the vote here would comply with the statute. The plaintiffs contend, however, that the vote was invalid because five members of the Commission did not attend both sessions of the public hearing as provided in the regulation. From the phrasing and punctuation of the regulation, it is apparent that the phrase "comprised of at least five members of the Commission to which hearing" refers to a committee only and does not require five members of the Planning Commission to attend the public hearing. This requirement in any event is also directory and not mandatory.
 I
The plaintiffs also contend that Zaleta could not properly vote on the application. The general rule is that a member of an administrative agency who did not participate in the proceedings and attend the public hearing is not entitled to vote on the application. Watson v. Howard, 138 Conn. 464,466. In order for an agency member to participate in decisions, the member must be sufficiently acquainted with the issues raised and the evidence and arguments presented at the public hearing and the evidence before the agency in order to exercise an informed judgment. Dana-Robin Corporation v. Common Council, 166 Conn. 207, 216, 217; Loh v. Town Plan Zoning Commission, 161 Conn. 32, 42; New Haven v. Public Utilities Commission, 165 Conn. 687, 724. The cases allow an agency member who did not attend one or more of the public hearing sessions to listen to a tape of them, review pertinent documents and then vote on the application. Loh v. Town Plan and Zoning Commission, supra, 42; Derby v. Water Resources Commission, 148 Conn. 584,589; Shailer v. Planning Zoning Commission, 26 Conn. App. 17,32.
In this case, Zaleta knew that he had to be familiar with the applications in order to vote on them, and he listened to tapes of the public hearings. He viewed the property involved and saw some of the plans, but has no specific recollection of reviewing all of the exhibits. CT Page 6261 Commission members can hardly be expected to commit all facets of every application to memory, and sufficient familiarity with an application to vote on it is a matter of degree and judgment.
Whether Zaleta knew enough about the applications here does not have to be resolved because there is a more fundamental problem. Zaleta was neither a regular or alternate member of the Commission when the applications were heard in 1989, and most of the documents for them were submitted to the Commission. It is one thing for a commission member who misses the public hearing but is otherwise involved in the application at all stages to review a transcript or listen to the tape of the hearing, but cases on the issue do not go so far, however, as to allow a person who is not a commission member when the evidence was submitted and the public hearing held and closed to participate in the decision. The parties before an administrative agency reasonably expect the decision to be made by the agency members who heard it, and not by someone who is not a member of the agency at the time. Zaleta could not properly vote on the applications, and without his vote the special exception and related site plan would not have passed.
4. Receipt of evidence on site plan after the public hearing.
The plaintiffs make several related arguments that the Commission illegally accepted post hearing evidence from Ralto on both the special exception and site plan which invalidates the approvals. The record shows that a large volume of documents concerning the project were filed with the agency after the public hearing was closed on May 17, 1989. The concept is well established that a land use agency cannot receive ex parte evidence after the public hearing and that submission of it can invalidate the agency's decision. Blaker v. Planning Zoning Commission, 212 Conn. 471,478-80; Wasicki v. Zoning Board, 163 Conn. 166, 173, 174; Pizzola v. Planning Zoning Commission, 167 Conn. 202,207, 208; Carlson v. Fisher, 18 Conn. App. 488, 500-503. Ralto claims that the evidence was properly received by the Commission and was not prejudicial to the interest of the plaintiffs for the following reasons:
(1) it was technical and professional assistance from advisors to the Commission;
(2) the data applied only to the site plan which was separate and distinct from he special exception, and no CT Page 6262 public hearing is required on a site plan;
(3) some of the data was on waiver of subdivision regulations; and
(4) the plaintiffs did participate or had the opportunity to rebut any post hearing evidence.
The general rule is that the agency cannot properly consider additional evidence submitted by an applicant after the public hearing without providing the necessary safeguards guaranteed to opponents of the application and to the public, which includes a fair opportunity to cross-examine witnesses, inspect documents presented, and offer evidence in explanation or rebuttal. Blaker v. Planning Zoning Commission, supra, 478. There is an exception to this rule where the evidence received by the agency is from persons providing professional assistance to it in evaluating the application. Hawkes v. Town Plan Zoning Commission,156 Conn. 207, 212; McCrann v. Town Plan Zoning Commission,161 Conn. 65, 77; Kyser v. Zoning Board of Appeals,155 Conn. 236, 251; Yurdin v. Town Plan Zoning Commission,145 Conn. 416, 421. This exception presupposes that the person making post hearing comments to the agency has no interest in the application. Kyser v. Zoning Board of Appeals, supra, 250, 251. There is nothing in the record to indicate that any city officials such as the city engineer had any interest in the application, but there was also correspondence to the Commission from Ralto's engineer and attorney and others which is not subject to the limited exception for noninterested consultants.
A further restriction on the technical assistance rule was recently imposed in Norooz v. Inland Wetlands Agency,26 Conn. App. 564, 573, 574: "The proper inquiry for a reviewing court, when confronted with an administrative agency's reliance on nonrecord information provided by its technical or professional experts, is a determination of whether the challenged material includes or is based on any fact or evidence that was lot previously presented at the public hearing in the matter." It is undisputed here that extensive documents on the site plan were submitted after the public hearing on the special exception concluded. The evidence submitted by the applicant's agents and the response to those documents by the Commission's consultants clearly went beyond the evidence submitted on the application at or prior to the public hearing. The documents covered a wide range of subjects pertinent to the special exception and related site plan including road profiles with traffic control devices, plans for private roads, sight distance CT Page 6263 calculations, road improvements, driveways, drainage plans, 100 year flood calculations, location of dwelling units, water supply and road length. The additional information submitted by the applicant's agents generated review and comments by the city engineer and other consultants. While not required by the regulations, the applicant also submitted two requests for waiver of subdivision regulations, primarily related to road length and design for the project. The plaintiffs contend that this information submitted to the Commission after the public hearing concluded was justified because it directly related to the site plan application under section 3.P of the Zoning Regulations. That argument presupposes that submission of post hearing evidence is only prejudicial when it directly relates to requirements in the regulations for the application before the agency. In Blaker v. Planning Zoning Commission, supra, the evidence consisted of documents by the applicant's attorney as to the number of votes required to approve the application, which was found sufficient to create a rebuttable presumption of prejudice.
More important, it is clear from the record that the special exception and site plan are interrelated and that under the regulations site plan review is an integral part of approval of the special exception. Each case turns on its own facts, but it is a common scheme for zoning regulations to require a site plan as part of a special exception or special permit application. See SSM Associates Limited Partnership v. Plan Zoning Commission, 15 Conn. App. 561, aff'd, 211 Conn. 331. A site plan is required for all special exception uses. [Section 3.P(1).] Section 8.C.6 requires a complete site plan complying with section 3.P to be approved by the Planning Commission prior to the issuance of a special exception. In order for the Planning Commission to approve a special exception, the committee must find that the site plan is in harmony with the character of the neighborhood. [Section 3.0(9)(b).] All of the standards in section 3.0(9), which would include the site plan, must be considered by the Planning Commission when reviewing a special exception. [Section 8.C.16.] If the special exception and site plan were not interrelated, there was no reason to delay action on the special exception for thirteen months after completion of the public hearing.
The Commission was required to decide the application within sixty-five days after the hearing, subject to extensions not to exceed an additional sixty-five days. Section 8-26d(a) of the Connecticut General Statutes. When the special exception was approved on June 20, 1990, the site plans still did not conform to the regulations. Among other CT Page 6264 problems, condition 16 attached to approval of the special exception required a revised site plan to be submitted within thirty days in accordance with section 3.P of the Zoning Regulations reflecting all changes required by the other conditions attached to the special exception.
Since the special permit and site plan are interrelated and the site plan is a condition for approval of the special exception, the plaintiffs and the public were entitled to discuss the site plan application at the public hearing on the special exception. Even though section 8-3(g) of the General Statutes does not require a hearing on a site plan application, the site plan documents must be in existence and available for consideration at a public hearing on a special exception which is otherwise incomplete without the site plan. It has been recently held by the Supreme Court that a land use agency can attach conditions which may require additional information to be submitted at a later date without violating the ex parte communication rule as long as the agency gives interested persons an opportunity to challenge the evidence submitted to satisfy the condition. Gardiner v. Conservation Commission, 222 Conn. 98, 103,104, 106. That is not the situation here since most of the information on the site plan was submitted after the public hearing without any further hearing or chance for rebuttal. The site plan was an integral part of the special exception, they were based upon post hearing evidence and approved without safeguarding the due process rights of the plaintiffs and the public.
When evidence is illegally received by a land use agency, it must be shown that the decision making process was affected so that the final decision of the agency was unfair, and consideration is given to the role the ex parte communication played in the agency's decision. Martone v. Lensink, 207 Conn. 296, 306; Henderson v. Department of Motor Vehicles, 202 Conn. 453, 460. Where ex parte evidence is improperly received, a rebuttable presumption of prejudice arises, and the burden shifts to the defendants to show that the ex parte communication did not prejudice the proceedings. Blaker v. Planning Zoning Commission, supra, 478-480. There is obvious prejudice here. The Commission clearly delayed approval of the special exception until it determined that the applicant would carry out a site plan meeting requirements imposed by the Commission. Telker v. Planning Zoning Board, 6 CSCR 523 (1991). While the record does indicate some post hearing participation by an attorney for the opponents, submission of documents by him and some participation of the plaintiffs at hearings on the subdivision waiver applications, the defendants have not CT Page 6265 shown that the opponents and the public in general had an adequate opportunity to refute all of the post hearing evidence relevant to the special exception. The site plan documents, comments from agency consultants and other evidence submitted by the applicants agents over a thirteen month period was so extensive that the court cannot find that the sporadic attempts of the plaintiffs and their attorney to examine and refute it was adequate, and the failure to hold a public hearing deprives them of the right to ask questions of the persons who prepared the documents. The Commission should have denied the special exception because it was incomplete and entertained a new application when Ralto got its act together.
Since the Commission followed improper procedures in granting the applications, it is unnecessary to consider other issues raised by the plaintiffs, They include: (1) whether the approvals fully complied with the regulations, (2) whether the conditions attached to the special exception were authorized by the regulations or necessary to protect public health, safety convenience and property values, Housatonic Terminal Corporation v. Planning Zoning Board, 168 Conn. 304, 307, and (3) whether the applicant complied with the conditions within a reasonable time after the special exception was approved. In the event of future proceedings, if the Commission approves the application with conditions consistent with the General Statutes and its own regulations, whether or not the successful applicant will comply with the conditions as a condition precedent to a zoning permit is not a material consideration, and does not prevent the Commission from acting on the application.
The appeal is sustained.
Robert A. Fuller, Judge