## David A. Carlson et al. *v.* David Fisher et al. (6873)

Dupont, C. J., Stoughton and Jacobson, Js.

Argued February 7—decision released May 30, 1989

*Gordon A. Evans,* with whom, on the brief, was *Richard H. Lamere,* for the appellants-appellees (plaintiffs).

*Peter M. Sipples,* with whom, on the brief, was *Thomas J. Daly,* for the appellees (named defendant et al.).

*Thomas E. Crosby,* with whom, on the brief, were *William F. Gallagher* and *Gwen B. Weltman,* for the appellee-appellant (defendant Steven Leninski).

JACOBSON, J. The plaintiffs appeal from the judgment of the trial court, *Zoarski, J.,* dismissing their appeal from the decision of the town of Guilford planning and zoning commission[1] which granted a subdivision appli-

---

[1] The named defendant was sued in his capacity as chairman of the commission. The other defendants in this action are the commission, the town

cation for property abutting that of the plaintiffs. They claim the trial court erred (1) in upholding the commission's approval to resubdivide property and to permit the use of a right of way in a manner that the commission had previously prohibited, despite the failure of the commission to show that circumstances or conditions had changed, (2) in holding that the plaintiffs had failed to prove they were deprived of due process rights when the commission considered, after the public hearing, both a plan by the applicants and recommendation by the town engineer concerning a proposed drainage system, and an ex parte request by the applicants for a waiver of an open space requirement, (3) in rendering a decision before receiving a full record of the commission's hearing, and (4) in upholding the commission's approval of the application even though it violated the town's zoning regulations.[2]

The defendant Steven Leninski cross appeals from the denial by the trial court, *D. Dorsey, J.,* of a motion to dismiss the plaintiffs' appeal to the Superior Court, claiming that the plaintiffs failed to follow strictly the statutory requirements for appealing zoning decisions. We find error on the plaintiffs' appeal and no error on the cross appeal.

The record reveals the following facts. On October 23, 1986, George Mordechai and Kevin Shea applied to the commission to resubdivide a 2.7 acre parcel of property into three lots. The parcel was once part of a larger lot that surrounded the plaintiffs' property on three sides and included a right of way, approximately fifty feet wide, that bordered the plaintiffs' property on the west side and extended north toward Broad Street. The larger parcel also contained a twenty foot

clerk, and Steven Leninski, the owner of the subject property, who was joined pursuant to General Statutes § 8-28 (b) on June 5, 1987.

[2] The plaintiffs' remaining claims of error on appeal are considered within the four issues as stated.

strip, bordering the plaintiffs' land on the north, that extended perpendicularly from the right of way (known and referred to hereafter as Conway Drive) into the eastern region of the larger parcel that surrounded the plaintiffs' land.

In 1971, subdivision approval was obtained and this larger parcel was subdivided into two lots, 62-1 and 62-2, subject to conditions. One condition required that any building on lot 62-2 have access only from Broad Street, "due to the inadequacy of the driveway in the 50-foot strip to handle additional and emergency traffic." Conway Drive was contained in lot 62-2. The 1971 subdivision effectively created an H-shape for lot 62-2, with the left leg constituting Conway Drive, the center piece the twenty foot right of way, and the north and south spaces constituting lots 62-1 and the plaintiffs' property, respectively. The right leg constituted the bulk of the property of lot 62-2.

The owner of the property that was subdivided into lots 62-1 and 62-2 thereafter sold lot 62-1. In 1985, application was made to the commission to subdivide lot 62-2; a public hearing was held and the plaintiffs appeared in opposition. They were concerned that the proposal included use of the twenty foot strip across the north of their property for access to two of the three lots to be created. They argued that the 1971 subdivision approval was conditioned on the fact that any buildings erected on the lot would have access only to Broad Street, and that use of the strip would substantially devalue their property. They also voiced concerns over severe drainage problems on the lots. The 1985 subdivision application, upon suggestion by the commission, was resubmitted as an application for a resubdivision. The matter was never considered, however, because lot 62-2 was sold by the owner.

The resubdivision application in this case resembles closely the initial subdivision application proposal presented by the owner of the property in 1985. The commission held a public hearing on December 8, 1986, and the plaintiffs appeared, voicing essentially the same arguments expressed during the 1985 hearing. At the close of the hearing, the commission voted to table the application, in order to review the records regarding the 1971 subdivision and to discuss water drainage concerns with the town engineer.

Following the public hearing, the commission received a memorandum by the town engineer, dated December 15, 1986, that indicated that he had reviewed plans of a storm sewer system, that they "reasonably addresse[d] the concerns of localized flooding," and that there would be "no objection to issuance of building permits for these lots" once the system was completed. On the same day, the commission met in executive session and, after some debate, voted to approve the resubdivision application, subject to a number of conditions. These appeals followed the trial courts' decisions to deny the defendant commission's motion to dismiss and its ultimate decision dismissing the plaintiffs' appeal.

## I

We initially address the defendant Leninski's claim that the trial court erred in denying the motion to dismiss the plaintiffs' appeal to the Superior Court. The following facts are pertinent to this claim. The plaintiffs filed their appeal on January 20, 1987, and used a JD-CV-1 civil summons form; the return date was listed, in error, as March 31, 1987, and the named defendants were David Fisher, as chairman of the commission, and Barbara Rawson, town clerk of Guilford. The accompanying complaint and citation referred to the commission as a party defendant.

On February 4, 1987, the plaintiffs filed an amendment to their appeal to reflect that the defendants Fisher and Rawson were served in their representative capacities and that the commission was the designated defendant. This amended appeal, filed on an amended JD-CV-1 summons form, was sent to the defendants on February 2, 1987.

The defendant commission filed a motion to dismiss on March 9, 1987, arguing that because the return date should have been March 3, not March 31, 1987, and because the plaintiffs had used an incorrect form to file the appeal and had named the wrong party defendants, the trial court lacked both subject matter jurisdiction and personal jurisdiction, and that the appeal should be dismissed for insufficient service of process.

The trial court found that the plaintiffs' incorrect use of the JD-CV-1 form, when another form was required,[3] did not defeat jurisdiction. The court cited *Chestnut Realty, Inc.* v. *Commission on Human Rights & Opportunities*, 201 Conn. 350, 356, 514 A.2d 749 (1986), which held that providing an improper form used to commence an administrative appeal that "contains a proper citation, signed by a competent authority . . . does not call into question the jurisdiction of the Superior Court to entertain the appeal." In that case, the court examined the contents of the form and, finding that the information adequately gave notice to the defendant of the nature of the proceedings, it concluded that, absent a showing of prejudice by the defendant, the use of the incorrect form did not mandate dismissal of the administrative appeal. Id., 357.

[3] Practice Book § 49, the provision regarding commencement of civil actions generally, specifically prohibits the use of writ of summons form JD-CV-1 when commencing administrative appeals. In such cases, Practice Book forms 204.7 and 204.8 are to be used.

We conclude that Leninski has failed to show prejudice, and it is evident that the improper form sufficiently advised the defendants of the nature of the proceedings brought against the commission. Therefore, we uphold the decision of the trial court that the improper form used to commence the administrative appeal did not warrant dismissal.

The next question is whether the allegedly incorrect naming of the defendants in the original summons also required dismissal. " 'Appeals to courts from administrative agencies exist only under statutory authority. . . . A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created.' " (Citations omitted.) *Basilicato* v. *Department of Public Utility Control,* 197 Conn. 320, 322, 497 A.2d 48 (1985).

The statutory procedure for appeal in this case is found in General Statutes §§ 8-8 and 8-9, which provide in relevant part that such appeals "shall be made returnable to [the superior] court in the same manner as that prescribed for civil actions brought to said court." General Statutes § 8-8 (a). Further "[n]otice of such appeal shall be given by leaving a true and attested copy thereof with, or at the usual place of abode of, the chairman or clerk of said board, and by serving a true and attested copy upon the clerk of the municipality." General Statutes (Rev. to 1987) § 8-8 (b).

Leninski has cited in his brief three Superior Court cases that essentially stand for the proposition that failure to cite the proper party defendant in the writ, summons or complaint deprives the court of subject matter jurisdiction. In this case, however, the citation clearly named the commission as party defendant and it was abundantly clear, throughout the complaint, that the commission was a defendant. The plaintiffs have both cited and served the proper party defend-

ant as required in the statutes.[4] We hold that the plaintiffs complied with the statutory requirements in commencing their appeal and that the trial court did not err in finding that the incorrect designation on the summons form alone did not warrant dismissal.

The final aspect of the commission's motion to dismiss concerns the incorrect return date. The essence of the claim is that the trial court erred when it allowed the plaintiffs to amend their summons under General Statutes § 52-72 which provides in relevant part that "[a]ny court shall allow a proper amendment to civil process which has been made returnable to the wrong return day or is for any other reason defective, upon payment of costs taxable upon sustaining a plea in abatement." Leninski argues that applying this provision to zoning appeals frustrates the legislative intent of General Statutes §§ 8-8 and 8-28, which contain abbreviated appeal periods for zoning and planning cases.[5]

It is true that an improperly specified return date affects the court's jurisdiction. *Hartford National Bank & Trust Co.* v. *Tucker,* 178 Conn. 472, 478–79, 423 A.2d 1141 (1979), cert. denied, 445 U.S. 904, 100 S. Ct. 1079, 63 L. Ed. 2d 319 (1980). We agree that the incorrect return date should not be viewed lightly. "The defect of an improper return day is not a minor defect. Rather

[4] The facts of this case are distinct from those in *Simko* v. *Zoning Board of Appeals,* 205 Conn. 413, 420, 533 A.2d 879 (1987), and its progeny. Unlike those cases, in this case both the chairman of the commission and the town clerk were named in the citation and served. The defendant Leninski's cross appeal addresses the more narrow issue of whether the statutory procedural requirements were met where only the summons form, and not the citation and complaint, failed to name the commission correctly as a party defendant.

[5] General Statutes § 8-8 (a) requires appeals from zoning boards be taken "within fifteen days from the date when notice of such decision was published in a newspaper" as provided in the statutes. General Statutes § 8-28, concerning appeals from town planning commissions, contains a similar time limitation.

. . . an improper return day is a defect which could not be corrected at all until [General Statutes] § 52-72 was enacted." *Brandriff* v. *Sellas,* 40 Conn. Sup. 243, 244, 488 A.2d 853 (1985). We agree with the trial court, however, that § 52-72 applies to the matter at hand. General Statutes § 8-8 (a) provides that appeals to the Superior Court "shall be made returnable to said court in the same manner as that prescribed for civil actions brought to said court." The court did not err in finding that the plaintiffs could amend the incorrect return date on their summons. The trial court therefore had jurisdiction to entertain the appeal.

## II

The plaintiffs' first claim is that the trial court erred in upholding the commission's decision to grant resubdivision approval of a plan that included use of a twenty foot strip as access to two interior lots. The plaintiffs argue that the commission had prohibited the use of the strip for buildings erected on the property abutting the plaintiffs' when it granted subdivision approval in 1971, and that the commission failed to find that, as required by zoning law, a change in circumstances or conditions had occurred since then that would allow it to overrule its 1971 decision.

There appears to be little question that the commission had the authority, in 1971, to grant the subdivision approval subject to the condition that access to lot 62-2 be only from Broad Street, thus, effectively prohibiting further use of the twenty foot strip for access to Conway Drive. General Statutes § 8-26 authorizes municipal planning commissions to consider and act upon subdivision applications, and authorizes the commission to "approve, modify and approve, or disapprove any subdivision or resubdivision application." Therefore, "it can approve the application exactly as it was submitted; it can make changes to the application to

ensure compliance with the subdivision regulations and compatibility with the municipality's comprehensive plan, and then approve the application as so modified; or it can disapprove the application outright. Any other action taken by the planning commission necessarily falls outside the statutory delegation of powers contained in the enabling act and cannot stand." *Moscowitz* v. *Planning & Zoning Commission,* 16 Conn. App. 303, 309, 547 A.2d 569 (1988).

The commission's 1971 subdivision application approval, containing the limited access condition, made changes in the application to allay the commission's concerns about emergency vehicle and normal traffic use of Conway Drive, and, as such, was within the commission's authority to make. *Crescent Development Corporation* v. *Planning Commission,* 148 Conn. 145, 168 A.2d 547 (1961); *Moscowitz* v. *Planning & Zoning Commission,* supra, 311 and n.7. The question thus becomes, on appeal, whether the trial court's finding that the commission's approval of the resubdivision was proper in that it was adequately based on a finding that circumstances or changes had occurred, between 1971 and 1986, that would allow it to overrule the condition included in the 1971 application it had modified and approved.

Administrative agencies are "impotent to reverse [themselves] unless (1) a change of condition has occurred since its prior decision or (2) other considerations materially affecting the merits of the subject matter have intervened and no vested rights have arisen. *Middlesex Theatre, Inc.* v. *Hickley,* 128 Conn. 20, 22, 20 A.2d 412 [1941]." *Hoffman* v. *Kelly,* 138 Conn. 614, 616–17, 88 A.2d 382 (1952). " 'The principle applies, however, only when the subsequent application seeks substantially the same relief as that sought in the former.' *Fiorilla* v. *Zoning Board of Appeals,* 144 Conn. 275, 279, 129 A.2d 619 (1957)." *Grillo* v. *Zon-*

*ing Board of Appeals,* 206 Conn. 362, 367, 537 A.2d 1030 (1988). Because the commission's 1971 subdivision approval was conditioned upon limiting access to buildings on lot 62-2 to Broad Street, due to a perceived "inadequacy of the driveway in the 50-foot strip to handle additional and emergency traffic," the commission would have had either to articulate how the new proposal did not cause the commission concern for such an inadequacy or to articulate other considerations, substantially affecting their decision, that precipitated their differing conclusion.

It is unnecessary for us to determine whether the 1971 and 1986 applications sought "substantially" the same relief.[6] The minutes of the executive session clearly show that the commission was aware of the 1971 condition and provide adequate evidence that certain considerations, not part of the commission's 1971 reasoning, caused it to decide that it was not bound by the 1971 condition in granting the resubdivision approval. In particular, the commission's focus, during its discussion in the executive session, was appropriately directed at the reason the commission had imposed a condition in 1971: the adequacy of Conway Drive to handle emergency vehicles and additional traffic. It was noted that after 1971 police, fire and engineering departments had established criteria to determine safe and adequate driveways for houses and lots, and that Conway Drive fell within those criteria. One member of the commission admitted that he did not understand the reason for the 1971 condition and hypothesized that the earlier approval, anticipating one large lot, reflected the commission's belief that Broad Street access made better sense. He explained that

---

[6] We note that whether the relief sought in the applications is substantially the same is for the defendant commission to determine in the first instance. *Hotchkiss Grove Assn., Inc.* v. *Water Resources Commission,* 161 Conn. 50, 58, 282 A.2d 890 (1971).

Conway Drive access to the two interior lots, meeting current town regulations, would be more appropriate.

The plaintiffs debate whether the proposed access, as approved, satisfies current regulations. Specifically, they argue that the regulations prohibit more than five lots' using a private road, such as Conway Drive, and that because part of the access way is less than twenty-five feet wide, and in some parts only twelve feet wide, the application proposal violates § 4.4.3 of the town zoning regulations. We agree with the contention of the defendants that the plaintiffs' reliance on § 4.4.3 is misplaced and that the commission properly construed § 31.2.1 of the zoning regulations and § 4.7 of the subdivision regulations, as amended, to find that interior lots may be created in R-3 zones, as this was, and that the access route satisfied the minimum of twelve feet in width. We also agree with the defendants that the number of lots "served by a single driveway, access way, or private road," as provided in § 31.2.1 (4) (a) of the zoning regulations, does not exceed five.

We hold that, on the basis of the foregoing considerations and the record before us, the commission acted properly in deciding that the 1971 condition did not bar their 1986 resubdivision approval which authorized the use of Conway Drive for access to the two interior lots.[7]

[7] We agree with Chief Justice Maltbie's explanation, in dicta, of the law concerning this matter: " '[I]t appears to be well established that a zoning board of appeals or adjustment should not ordinarily be permitted to review its own decisions and revoke action once duly taken. Otherwise there would be no finality to the proceeding; the result would be subject to change at the whim of members or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty and impermanence'; [yet] we [have] quoted from a New York decision which states that the principle is not a hard and fast rule, but a board's reversal of its action should be permitted only 'when there is justification and good cause.' *People ex rel. Brennan* v. *Walsh,* 195 N.Y.S. 264 [1922]." *Dadukian* v. *Zoning Board of Appeals,* 135 Conn. 706, 711–12, 68 A.2d 123 (1949).

The plaintiffs' second claim of error is that they were deprived of due process rights when the commission received a detailed water drainage proposal from the applicants after the public hearing, and, after receiving a favorable recommendation from the town engineer on the basis of that report, voted to approve the plan during executive session. We agree.

The facts pertinent to this claim are as follows. During the public hearing on December 8, 1986, the question of water drainage was discussed at length. The engineer for the applicants testified that the town engineer had asked him to "look into alternative systems" for water removal after reviewing the initial proposal. He testified that one proposal that would remove excess water by hooking into the town's drainage system would force the applicants to increase the size of the town pipes and ultimately cost approximately $65,000, a plan the applicants were "willing to consider seriously." Following this testimony, questions were opened to the board and to the public. Answering one question, the engineer indicated how the proposed plan utilized catch basins to channel the water to the town's system. Another question was whether the town engineer agreed that the proposal would rectify the drainage problem, and the engineer responded that the town engineer had suggested the idea to him, but that the town engineer had not "received the technical information on that as yet."

The plaintiffs' attorney raised the drainage question again during his statements made at the hearing. He indicated that, while the developers would give serious consideration to spending the $64,000 to $68,000 to put in a system that might alleviate the drainage problem, their merely considering the plan was not enough. "I think that you've got to have a plan that's presented to give opponents a chance to assure themselves that it will, in fact, solve the problems that

they're concerned about because there's a very real problem . . . and it's not addressed in anything that's been submitted to the commission to date." Later, he stated, "Take a look at what is being proposed to solve the drainage problem. Nothing. They're willing to give serious considerations to some plans. [The town engineer] doesn't have the technical details on these plans. If he doesn't, we don't either. So I think it's premature."

Following his attorney's statements, the named plaintiff testified to the extensive water drainage problems confronting him. One of his neighbors testified that "if we get any more water from roofs and driveways and parking lots and sewer systems . . . our property is going to become a bayou."

Testimony at the hearing ceased. The commission ended the hearing by entering into public record two documents from the office of the director of health and town engineer, dated December 8, 1986, and June 10, 1985. The December 8 memo to the commission stated: "Attached is a copy of our memo of June 10, 1985. Since that time no acceptable proposal has been submitted regarding surface water drainage. . . . As previously stated, an acceptable comprehensive drainage plan is required prior to action on this proposal." Relevant portions of the 1985 memo, apparently drafted when the previous owner of the lot had applied for subdivision, indicated that "portions of the overall parcel have suffered from localized ponding of water runoff from the surrounding higher properties. Generally, this has been of little concern because the land has been open, but the proposal to place three large residences with driveways . . . dictate that this flooding be addressed. Prior to approval of this subdivision, a comprehensive site drainage plan will have to be developed and approved." After the hearing was closed to the public, the commission, during a regular meeting, tabled the application in order to reread the rec-

ords from the 1971 hearing and to discuss the current proposal with the town engineer.

The resubdivision was considered by the commission the following week in a regular meeting closed to the public. The minutes of the hearing indicated that the town engineer had "received and reviewed the technical details of the drainage system as required by the commission . . . [and had] written a subsequent memo on this review of the drainage design as proposed by the applicant." The memo, dated that day, indicated approval of the proposed system. The minutes reflect that one of the members opposed the proposal because it was "too dense for the area with the ponding problem," and the commission chairman responded that while "that was one of the concerns the commission had when [it] asked for an on-site subsurface water drainage plan . . . the applicants' engineer has come up with one in great detail." When another member asked the town planner about his opinion on the proposal, he stated that he thought "the issue of the number of lots depend[ed] on the critical variable, the surface water drainage . . . ." He also stated that he was not an expert in that area, but that the town engineer had "reviewed the supplemental data and the detailed design" and believed that the three lots could be served by the proposed plan the applicants' engineer had designed. He added that the town would benefit "significantly" because the plan would replace a portion of the town's drainage system with a substantially larger system.

"While proceedings before zoning and planning boards and commissions are informal and are conducted without regard to the strict rules of evidence . . . they cannot be so conducted as to violate the fundamental rules of natural justice." (Citations omitted.) *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 207, 355 A.2d 21 (1974). "Due process of law requires that the parties involved have an opportunty to know the

facts on which the commission is asked to act, to cross-examine witnesses and to offer rebuttal evidence." Id. To that end, our law holds that zoning boards cannot consider additional evidence submitted by an applicant, without granting the opponents and public the opportunity to examine that evidence and to offer evidence in explanation or rebuttal. Id.

The defendants argue that the plaintiffs were aware of the proposal, eventually approved by the commission, during the public hearing but failed either to rebut the proposal or to request the additional information that was ultimately considered by the commission. The defendants further argue that zoning boards are entitled to receive technical assistance when deciding on matters beyond their expertise, and that this information may be received and discussed in executive session.

Although the latter assertion is true; *Pizzola,* v. *Planning & Zoning Commission,* supra, 208, and cases cited therein; it is necessary that the opposition be afforded not only an opportunity to know of the information but also an opportunity to rebut that evidence. Id. Such was not the case here. Even if the plaintiff had an opportunity to know of the detailed specifications submitted by the applicants to the town engineer following the public hearing, the plaintiffs never were given the opportunity to voice their objections, if any, to the proposed water drainage system, obviously an issue that concerned them greatly. We hold, therefore, on the facts of this case, that the plaintiffs were denied their due process rights to cross-examination regarding this evidence and that it was error for the trial court to have upheld the action of the committee on this point.

The plaintiffs' claim that their due process rights were violated when the commission considered information ex parte also extends to an open space waiver request by the applicants, mailed to the commission sometime before their December 14, 1986 meeting

after the public hearing.[8] We disagree with this contention. Under the holding in *Pizzola,* the general public and opponents of a proposal before the zoning commission have the right to know of and be given an opportunity to rebut information received by the commission, ex parte, from the applicant. We find the standard has been met in this case. The proposal before the board during the public hearing did not contain area reserved for open spaces as required by the town's regulations. The plaintiffs were given the opportunity to question the proposal's failure to satisfy the open space requirement during the public hearing, and the transcript shows that, to a slight degree, they did.[9] The applicants' letter requesting the waiver contained no information about open space that the proposal failed to reflect. Thus, the plaintiffs' due process rights were not abridged when the commission received, ex parte, the applicants' open space waiver request and granted it in executive session.

The plaintiffs' next claim is that the trial court rendered its decision before it received portions of the record from the 1971 and 1985 subdivision and resubdivision hearings, and therefore committed error. They argue that, because the memorandum of decision was dated December 7, 1987, and the supplemental infor-

---

[8] Guilford subdivision regulation § 4.13 provides in part: "Land for parks . . . and natural open spaces shall be provided and reserved in each subdivision in accordance with any adopted Comprehensive Plan of Development and Conservation and as deemed necessary and in locations deemed proper by the Commission. . . . Not less than 10% of the total area of the subdivision shall be so reserved, unless the Commission determines that a lesser area is sufficient to satisfy the need determined by the Commission or that there is no land in the subdivision suitable for such reservation."

[9] Plaintiffs' counsel, during his statement, first argued that the plan should be rejected because the property was contained in an area recommended for preservation by the town's comprehensive plan. Then he noted: "Indeed, in your subdivision regulations you point out that it's appropriate in any subdivision to assure yourself that there is some open space or some partial land required."

mation in the record was not returned to the court until December 9, 1987, the court's decision was improperly rendered. We disagree. The record indicates that the memorandum of decision was filed on December 10, 1987, and the parties notified on December 14. The final item, a map, was received on December 9, 1987. The record was substantially complete prior to December 7, 1987. Based on our review of the entire record, there is nothing that suggests that the trial court actually failed to review any evidence. We do not presume that the trial court filed its memorandum of decision without having received and reviewed all of the relevant information.

We next address the plaintiffs' claim that the commission approved the resubdivision application after ignoring the plaintiffs' evidence that the resubdivision would impair the value of the plaintiffs' property in violation of town zoning regulation § 31.2.1.[10] They argue that expert testimony presented during the 1985 hearing and made part of the commission's current record established that the value of their property would decrease if the proposed additional access over the twenty foot strip was permitted,[11] and that, in the absence of contrary testimony, the commission could not have approved the application.

[10] Guilford zoning regulation § 31.2.1 provides in part: "An existing or newly created lot having no frontage or insufficient frontage on a street may be used for the purposes, and subject to the limitations set forth below, provided: 1) it is located in an R-3 . . . District, 2) the access to such lot does not create a traffic or safety hazard nor does the location and layout of such access have a detrimental effect on property values . . . ."

[11] Our review of the record is limited solely to whether the commission could have approved the proposed resubdivision on the basis that the additional access allowance did not devalue the plaintiffs' property. The plaintiffs' appellate brief appears to suggest that the commission was bound also to consider the effect of water drainage problems, caused by the resubdivision, on the plaintiffs' property value. They have not cited any statute or regulation, however, for this claim. Indeed, their trial brief was limited to the effect the increased accessway usage would have on their property value, and cited only zoning regulation § 31.2.1, supra.

We disagree. The record, viewed in its entirety, contains a number of reasons why the commission reached its conclusion despite the plaintiffs' testimony. The applicants engaged a landscape architect to ensure that any negative impact the increased use of the strip might have on the plaintiffs' property would be minimized or negated. The commission was free to evaluate this evidence and weigh it accordingly with all other testimony. In addition, the minutes of the December 15, 1986 meeting clearly show that property values were discussed by the commission. In conjunction with the other evidence submitted by the applicants suggesting they were concerned that the development harmonize with the existing neighborhood, we will not second-guess the commission and decide that the increased use of the access way would devalue the plaintiffs' property in violation of zoning regulation § 31.2.1. Thus, the trial court did not err in finding that the commission did not act illegally or arbitrarily. Courts reviewing decisions of local zoning authorities afford them discretion "in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. *Stiles* v. *Town Council,* 159 Conn. 212, 219, 268 A.2d 395 (1970)." *Burnham* v. *Planning & Zoning Commission,* 189 Conn. 261, 266, 455 A.2d 339 (1983); see *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* 206 Conn. 554, 572–73, 538 A.2d 1039 (1988).

The final claim of error advanced by the plaintiffs is that the commission acted illegally or arbitrarily in imposing design restrictions on the structures contained in the proposal.[12] We disagree. The minutes of the December 15, 1986 commission meeting indicate that the members were concerned with the impact of the development on the historic streetscape. To allay

[12] The design restrictions contained in the conditions for granting the approval are as follows: "4. The facade of the house on Lot #1 shall be well

their concerns, they attempted to reach agreement with the applicants on a design that would promote the development's harmony with the historic section of town where the lot is situated. The plaintiffs have not cited any authority for the proposition that towns may not agree with the subdivision applicants on design concerns. In fact, the commission's action on this point was exercised well within their authority.[13] The trial court did not err in finding that the commission did not act illegally or arbitrarily when it issued its approval of the subdivision including design conditions agreed to by the applicants.

proportioned and arranged with the utmost simplicity and dignity relating to and integrated with the built environment surrounding it in the following manner:

"a. wooden clapboard siding only

"b. the cornice of extreme simplicity with nothing but straight moldings employed.

"c. the windows of double hung sash with multi-panes and a simple casement frame finished with only one or so moldings. The windows shall be well placed foward—almost on the same vertical plane as the outside wall. The juxtaposition of window-to-window and window-to-door arranged in the same classic manner of the surrounding homes of the same general period of the house facade to be built.

"d. The door shall be framed with pilasters of simple, classic lines, set flat against the house. The door itself, a simple panelled form with at least one molding applied to the casing. Simple crown moldings may be added above the architrave trim.

"e. The exposed foundation shall be stone or stone facade.

"f. No garage doors shall be visible from the street.

"g. If two end chimneys are incorporated in the design of the house on Lot #1, they must be constructed within the exterior end walls, or if one chimney is incorporated in the design of the house on Lot #1, it must be a central chimney.

"h. The roof slope in relation to the elevation of the structure should be compatible with the rest of the structure and those on Broad Street.

"It is noted that the above conditions have been agreed to by the applicant[s]."

[13] Guilford subdivision regulations provide in relevant part: "SECTION 4. DESIGN AND CONSTRUCTION STANDARDS.

"4.1 General: Subdivisions shall be designed to conform to the current Comprehensive Plan of Development and Conservation, adopted by the

Because we have found that the plaintiffs were deprived of their due process rights when the commission improperly reviewed the applicants' water drainage proposal ex parte, and that the commission did not afford the plaintiffs an opportunity to rebut that evidence, justice and fairness require that the resubdivision proposal be remanded to the Guilford planning and zoning commission for a new hearing and proceedings according to law.

There is error, the judgment dismissing the appeal is set aside and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

Commission for the Town or the neighborhood around the subdivision. . . ."

Guilford Comprehensive Plan of Development and Conservation section 2.2 provides in part:

"POLICY: to maintain Guilford as a country town in support of the current manner of living.

"Special features under the Policy are—

"b. to encourage site and building design that supports the established character of the Town . . . ."