[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Mary Z. Belin, from a decision of the defendant, Ridgefield Planning Zoning Commission (hereinafter "PZC"), to grant a special permit to the codefendants, Marcia Ippoliti, Edgardo Ippoliti, Eppoliti Enterprises, Inc., and Titicus Springs Health Care Corp. (hereinafter "the applicants"), for the construction of a continuing care facility (hereinafter "CCF"). Belin alleges in the appeal that she is an owner of property abutting the site of the proposed CCF.
The subject property is owned by two of the defendants, Marcia and Edgardo Ippoliti. The property consists of 58.7 acres of land located on Rte. 35 in Ridgefield. The applicants for the special permit include the owners and two corporations through which the owners are developing the property, Eppoliti Enterprises, Inc. and Titicus Springs Health Care Corp.
The development as planned consists of 176 total units comprised of full care, assisted care and independent living units. Along with the residential use, various recreational, administrative, open space and retail uses are planned. The development will be spread out in seven buildings of various sizes.
A CCF must be developed in accordance with section 419 CT Page 1760 of the Code of Ordinances of the Town of Ridgefield (hereinafter "town ordinances"). Developers are also required to obtain a special permit pursuant to section 312 of the town ordinances.
On April 2, 1992, the applicants applied to the PZC for a special permit to construct a CCF.[1] As required by section 312 and section 419 of the town ordinances, the following accompanied the application: (1) description of the proposal; (2) zoning report; (3) conservation restriction and easement; (4) affordable residence plan; (5) preliminary project construction schedule; (6) traffic impact report; (7) public transportation report; (8) utility confirmation letters; (9) certificate of need. On April 12, 1992, PZC members toured the site of the proposed facility during a special public meeting.
On May 6, 1992, a public hearing regarding the special permit application was held. The hearing was continued on May 26, 1992 and closed on that date.
On June 16, 1992, the PZC unanimously approved the application with twenty-eight conditions. The PZC made a finding that the proposed development will not exert a detrimental effect on the development of the district or nearby properties and that the application complies with all applicable requirements for development within a CCF zoning district. On June 18, 1992, notice of the decision was published.
On the same day, June 18, 1992, the plaintiff filed an appeal of the PZC decision. In her complaint, the plaintiff lists three grounds as the basis for the appeal:
(a) the PZC approved the special permit without receiving confirmation of the availability of water service required by sections 312.02.A and 419.0E(6) of the town ordinances;
(b) the PZC improperly received, after the close of the public hearing, information about the provision of municipal sewer service, depriving the appellant of the opportunity to challenge that information;
(c) the PZC did not receive substantial evidence to CT Page 1761 support its finding that the proposal was in harmony with the character of the neighborhood, as required by town ordinances section 312.02.C.
On October 2, 1992, the plaintiff filed a brief in support of her appeal. On October 13, 1992, the applicants filed a brief in support of the PZC decision. The PZC joins in this brief. On October 21, 1992, the plaintiff filed a brief in reply to the applicants' brief. A hearing was held before the court on October 21, 1992.
Aggrievement is a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 307, 592 A.2d 953 (1991). Unless the plaintiff alleges and proves aggrievement, his or her appeal must be dismissed. DiBonaventura v. Zoning Board of Appeals,24 Conn. App. 369, 373, 573 A.2d 1222 (1991).
General Statutes, Sec. 8-8(a)(1) provides in pertinent part:
 `Aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of . . . [a local zoning board].
An abutting property owner is aggrieved and may take an appeal to the superior court. General Statutes, Sec. 8-8(b). "The statute requires only that there be land affected by the decision of the zoning authority, and that the party seeking to appeal owns property abutting that land." Zoning Board of Appeals v. Planning Zoning Commission, 27 Conn. App. 297,302, 605 A.2d 885 (1992).
In the instant case, the plaintiff alleges in her complaint that she owns property abutting the property for which the special permit was approved. At the appeal hearing, the plaintiff testified that she lives at 233 Danbury Road and that the back of her property abuts the subject property. The plaintiff also introduced into the record a copy of a deed which listed the plaintiff (under her maiden name) as the owner of a certain piece of property on Rte. 35 (Danbury Road) in Ridgefield.
An administrative appeal is confined to the record CT Page 1762 except that if facts necessary to establish aggrievement are not shown in the record, proof limited thereto may be taken by the court. General Statutes, Sec. 8-8(e). Clearly, the plaintiff offered sufficient evidence at the appeal hearing to establish aggrievement. The court finds that she is an abutting landowner and thus aggrieved pursuant to General Statutes, Sec. 8-8(a).
The plaintiff bears the burden of proof to demonstrate that the board acted improperly. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707, 535 A.2d 799 (1988). "Conclusions reached by [a local board] . . . must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Primerica v. Planning Zoning Commission, 211 Conn. 85, 96,558 A.2d 646 (1989).
 Generally, it is the function of a zoning board or commission to decide `within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court [has] . . . to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. [Citations omitted.] . . . .'
Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152,543, A.2d 1339 (1988). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." Spero v. zoning Board of Appeals, 217 Conn. 435, 440, 586 A.2d 590
(1991). Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. Id.
When considering a special permit application, the PZC's function is to determine whether the application satisfies the standards set forth in the regulations. A.P. W Holding Corporation v. Planning Zoning Board, 167 Conn. 182, 185,355 A.2d 91 (1974). The PZC must construe applicable CT Page 1763 regulations within the fair import of their language. Double I Limited Partnership v. Plan Zoning Commission, 218 Conn. 65,72, 588 A.2d 624 (1991).
Town ordinances section 312.02.A(3) provides in part:
 If the project is to be served by an existing water supply system, written confirmation of the availability of service shall accompany the application.
Further, town ordinances section 419.0.E(6) provides in part:
 In addition to the application requirements prescribed in Sec. 312.02.A, the application shall include the following additional fee and documentation . . . (6) Statements from the various utility companies confirming that the proposed continuing care facility will be supplied by water, power, and telephone services. . . .
In their application for the special permit, the applicants submitted a letter dated February 25, 1992 from the Ridgefield Water Supply Company to Gary Dayton of Eppoliti Incorporated. The letter reads as follows:
 This is to confirm that we expect to receive our long awaited diversion permit for the Beechwood Wells in the near future. Public hearings were held last December and the Hearing Examiner has recommended to the Commissioner of Environmental Protection that the conditions agreed to by this company and the Water Resources Management Division of the DEP be approved and that the Permit be issued.
 As soon as the Permit is received, we will commence construction on the Beechwood project. We anticipate completion of the project by October of this year. The Beechwood wells will increase the daily yield of our system by about 225,000 gallons per day, and this infusion should allow us to lift the moratorium on new service connections that is now in effect. CT Page 1764
 Since our 8 inch water main on Danbury Road already extends to your property, we foresee no difficulty in providing your proposed installation with water service once the Beechwood Wells are online.
(ROR, ex. m, pt. 7.) Also on the record is the report of the town conservation commission given at a pre-application meeting for the town commission. The report states that:
 The Ridgefield Water Supply Co. will furnish water for the site when the "Beechwood Wells" are completed.
(ROR, ex. h.)
Based on this record, the PZC approved the special permit application with the following condition:
 Prior to obtaining a zoning permit or the commencement of any construction activity pursuant to this special permit grant, documentation shall be submitted to the Commission showing that public water is available for the site.
While the proof of water service on the record alone may be insufficient to confirm present or immediate availability of water service, the condition attached will assure that the requirements for water service are met before construction begins.
 The board of appeals could grant the special exception subject to certain conditions if the board had authority to impose such conditions; [citations omitted]; and none of the conditions imposed by the board altered any requirement prescribed in the zoning regulations. (Citations omitted.)
Farina v. Zoning Board of Appeals, 157 Conn. 420, 422,254 A.2d 492 (1969).
The PZC has the authority to approve a special permit application with conditions. (Town ordinances section 312.02.D.) Further, the condition alters none of the CT Page 1765 requirements of town ordinances section 312.02.A(3) and town ordinances section 419.0.E(6), but simply assures that the project will not be built and occupied before it has water service. Therefore, the court finds that the PZC acted within its authority in attaching the condition to its approval of the special permit and that the PZC's conditional approval of the CCF application was reasonable and within its discretion.[2]
The plaintiff alleges that the PZC accepted and considered post-hearing testimony in violation of the plaintiff's due process rights. The court finds, however, that the PZC's acceptance and consideration of certain evidence after the hearing was not contrary to law.
Town ordinances section 419.0.E(5) requires applicants for CCF permits to include with the application confirmation from the sewer authority of Ridgefield that the proposed CCF will be served by the Ridgefield Sewage Treatment Plant prior to occupancy and that a sewer connection permit will be issued.
The following evidence that sewer service is available appears in the record:
(1) the minutes of a Water Pollution Control Authority (WPCA) meeting on August 9, 1989, at which the WPCA unanimously approved the applicants' request to hook up the proposed CCF to the town sewer system (ROR, ex. b);
(2) the report of the Ridgefield town engineer to a pre-application review meeting which states that the sewer hookup for the Titicus Springs project has been approved (ROR, ex. h);
(3) a letter submitted with the application dated February 13, 1990 from Susan W. Stanley, the sewer administrator for Ridgefield to Oswald Inglese, town planning director. The letter states that:
 At the September 6, 1989 meeting of the Water Pollution Control Authority, the Board unanimously approved the sewer hook-up for Eppoliti Enterprises' proposed plans for a `continuing care facility'. (ROR, ex. m, pt. 7); CT Page 1766
(4) a memo dated May 1, 1992 from the town engineer to the PZC stating that the Titicus Springs development received approval from the WPCA to connect into the town sewer system. The memo stated that the sewer facilities proposed would be subject to change pending the town engineer's review of the final construction plans (ROR, ex. cc);
(5) a report by the town planning director, undated, which states that "[i]n accordance with the approval granted by the Water Pollution Control Authority on September 6, 1989, the project is to be served by the Sewered Area #1 sewage treatment plant" (ROR, ex. hh);
(6) a memo, dated May 14, 1992 from the first selectman to the town planner which stated that the WPCA approved the sewer line as proposed by the applicants in the May 5, 1992 public hearing with the condition that a neighboring property owner be able to hook up its development through the applicant's sewer lines to a nearby pumping station. Notwithstanding, the selectman stated that "[e]ven if the proposed sewer disposal plan for Titicus Springs should be changed, it should have no bearing on [the PZC's] decision to grant the special permit. There is a sewer capacity available for the property" (ROR, ex. nn);
(7) a memo dated May 19, 1992 from the town engineer to the PZC written in response to concerns raised at the public hearing on the impact of the project on the town sewer system. The town engineer states that "[t]here is adequate capacity within the plant to handle the . . . [Titicus Springs] flow . . ." (ROR, ex. qq);
(8) a memo dated May 22, 1992 from the town sanitarian to the town planner approving sewer plans for the project (ROR, ex. uu);
(9) the minutes of a WPCA meeting held on June 2, 1992 to reconsider the previous approval of the Titicus Springs sewer lines. The WPCA reaffirmed its previous approval. (ROR, ex. kkk.)
Based on this evidence indicating that the project had adequate sewer service and would be issued a sewer permit, the PZC's finding, implicit in the approval of the special CT Page 1767 permit and CCF application, that the applicants met the requirements of town ordinances section 419,0.E(5) was reasonable and supported by the record.
The plaintiffs allege that the PZC improperly received evidence as to sewer service availability after the public hearing. The plaintiffs cite Carlson v. Fisher, 18 Conn. App. 488,500-03, 558 A.2d 1029 (1989), for the rule that the PZC cannot base its decision on evidence submitted after the public hearing. In that case, after the public hearing had closed, the planning commission received the report of the town engineer who based his report on technical details not received by him until after the close of the public hearings. Carlson v. Fisher, supra, 502. The court held that "zoning boards cannot consider additional evidence submitted by an applicant without granting the opponents the public opportunity to examine that evidence and to offer evidence in explanation or rebuttal." Carlson v. Fisher, supra, 503.
 The proper inquiry for a reviewing court, when confronted with an administrative agency's reliance on nonrecord information provided by its technical or professional experts, is a determination of whether the challenged material includes or is based on any fact or evidence that was not previously presented at the public hearing in the matter.
Norooz v. Inland Wetlands Agency, 26 Conn. App. 564, 573-74,602 A.2d 613 (1992). "[T]he common thread [running through our case law] is that it is unfair for either the applicants or the opponents to submit additional evidence to the [agency] . . . without giving the other party an opportunity to respond to this additional evidence." (Emphasis in original.) Brookfield Plaza Limited Partnership v. Zoning Commission, 21 Conn. App. 489, 495, 574 A.2d 825 (1990).
It is clear in the instant case, that the applicants did not submit nor did the PZC consider evidence that was not presented at the public hearing on the project. The final public hearing on the project was held on May 26, 1992. The transcript indicates that there was confusion among the PZC members as to the "condition" the WPCA placed on its approval. (ROR, ex. ww, pp. 299-302.) This condition is found in the memo dated May 14, 1992 from the first selectman CT Page 1768 to the town planner, which stated that the WPCA approved the sewer line as proposed by the applicants in the May 5, 1992 public hearing with the condition that a neighboring property owner be able to hook up its development through the applicant's sewer lines to a nearby pumping station. (ROR, ex. nn.) The WPCA added that "[e]ven if the proposed sewer disposal plan for Titicus Springs should be changed, it should have no bearing on . . . [the PZC's] decision for the special permit. There is sewer capacity available for the property." (ROR, ex. nn.) At the public hearing, a PZC member asked the town planner to obtain a clarification of the approval from the WPCA. (ROR, ex. ww, p. 302.) The town planner then apparently approached the WPCA after the public hearing for a clarification of the condition. On June 2, 1992, the WPCA held a special meeting to reconsider its approval of the Titicus Springs sewer line. (ROR, ex. kkk.) At the meeting, the WPCA reaffirmed their approval of the sewer plan. (ROR, ex. kk.) The minutes of that meeting indicate that the WPCA was satisfied that the fulfillment of the condition to their approval of May 5, 1992 would be adequately guaranteed through conditions attached to the approval of the special permit. (ROR, ex. kk.)[3] The minutes also reveal that the WPCA based its approval on the engineering plans submitted by the applicants. (ROR, ex. kkk.) A memorandum of the result of the WPCA meeting states:
 At a special meeting of the Water Pollution Control Authority, the sewer line and pump station configuration presented by Titicus Springs at your May 5, 1992 public hearing was approved without contingencies by a 3-2 vote. There should be no further question about this matter as it relates to the special permit.
(Emphasis added.) (ROR, ex. jjj.) This memorandum was read to the PZC at its meeting on June 2, 1992. (ROR, ex. mmm.)
These facts shows that the PZC did not receive evidence after the close of the public hearing that was not available and presented at the hearings. Rather, the PZC received a clarifying report by a town commission based on plans that were subject to public comment and criticism at the May 5, 1992 PZC public hearing and the subsequent public hearing of May 26, 1992. In fact, the sewer plan that was approved was a main topic of contention between the parties CT Page 1769 at the public hearing. (See, e.g., ROR, ex. gg, pp. 133, 136.)
Since the PZC's actions did not include the consideration of any evidence which the plaintiff was required to be given the opportunity to examine and rebut, the plaintiff's due process rights were not violated.
The plaintiff alleges that the PZC did not receive substantial evidence to support its finding that the proposal is in harmony with the character of the neighborhood as required by town ordinances section 312.02.C.
"Conclusions reached by [a local board] . . . must be upheld by the trial court if they are reasonably supported by the record . . . . The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Primerica v. Planning Zoning Commission, supra, 96.
The PZC's decision states that "the subject property will not exert a detrimental effect on the development of the district nor on the value of the nearby properties." (ROR, ex. rrr, p. 8.) Such a finding is required for approval of special permits in the CCF district. (Town ordinances section 312.02.C.)
Review of the record discloses substantial evidence in support of this finding. Substantial oral testimony was given at the public hearing by the project architect, the landscape architect and the project engineer as to the measures taken in the planning process to insure that the project would blend in with the surrounding neighborhood. (ROR, ex. gg, pp. 10-40.) These individuals stated that the project would be designed to harmonize as much as possible with existing topography and landscape and with the surrounding structures. (ROR, ex. gg, pp. 10-40.) The PZC members personally toured the site. (ROR, ex. u.) The Ridgefield Architectural Advisory Committee gave the project its highest commendation. (ROR, ex. f.)
It is clear that the PZC's finding that the proposed development is in harmony with the surrounding neighborhood is reasonably supported by the record. CT Page 1770
The court finds that the PZC acted reasonably and within its discretion in conditionally approving the defendants' special permit and that the condition attached to the approval was authorized by the town ordinances and in accord with them. Therefore, this approval should be affirmed on appeal.
The court also finds that the PZC's finding that the applicants met the requirements of town ordinances section 419.0.E(5) pertaining to sewer service availability was reasonable and supported by the record and that the PZC's finding that the proposed development is in harmony with the surrounding neighborhood is reasonably supported by the record.
Accordingly, plaintiff's appeal is dismissed.
West, J.