[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
INTRODUCTION
This matter is before the court on remand from the Appellate Court. 43 Conn. App. 105 (1996). It concerns the grant of a special use permit ("permit") by the Planning and Zoning Commission of the Town of Enfield ("Commission") to Lego Building Corporation ("Lego") authorizing development of an office building and related facilities, and roadways, on property owned by Lego in Enfield ("Lego property").
The plaintiff ("Mr. Cybulski") appealed the grant of the permit, and the Superior Court sustained the appeal. Lego was granted certification by the Appellate Court, which reversed the decision of the Superior Court on a ground not relevant to these proceedings and remanded the appeal to this court. Accordingly, the appeal is, in effect, being heard de novo.
AGGRIEVEMENT
The parties stipulated before the court that, from the time Lego filed its application ("application") for the permit until November 5, 1993, Mr. Cybulski owned land ("Cybulski property") which abutted the Lego property. At the hearing on the remand, Mr. Cybulski offered uncontradicted evidence that he continued to own the Cybulski property from November 5, 1993 to the date of that hearing. Therefore, it is found that Mr. Cybulski continuously owned real property abutting the Lego property from the date Lego filed the application to the date of the hearing on the remand, and it is held that, pursuant to § 8-8 (a)(1) of CT Page 3779 the General Statutes, Mr. Cybulski is aggrieved by the grant of the permit and thereby has standing to prosecute this appeal.
DISCUSSION
Mr. Cybulski claims the appeal should be sustained on four separate grounds. They are:
 1) There was not sufficient evidence presented to the Commission at the public hearings conducted on the application on April 1, 1993 and April 29, 1993 ("public hearings") to allow it to conclude that the requirements of § 16-7 and § 16-8 of the Zoning Ordinance of the Town of Enfield ("Ordinance") (further section references are to the Ordinance) had been met;
2) The granting of the permit violated § 16-8.4;
 3) The Commission improperly delegated to employees of the Town of Enfield ("Town") authority to make decisions concerning the grant of the Permit; and
 4) The Commission improperly received reports from Town employees concerning the application, after the close of the public hearings.
1. Sufficiency of Evidence For Purposes of § 16-7 and § 16-8
Section 16.7 provides:
 16-7 General consideration. In authorizing any use, the Commission shall take into consideration the public health, safety and general welfare, the comfort and convenience of the public in general, and of the residents of the immediate neighborhood in particular, and may attach reasonable conditions and safeguards as a precondition to its approval. The Commission shall also consider the following general objectives:
 16-7.1 That all proposed structures, equipment or material shall be readily accessible for fire and police protection.
 16-7.2 That the proposed use shall be of such location, size and character that, in general, it will be in CT Page 3780 harmony with the appropriate and orderly development of the district in which it is proposed to be situated and will not be detrimental to the orderly development of adjacent properties in accordance with the zoning classification of such properties.
 16-7.3 That, in addition to the above, in the case of any use located in, or directly adjacent to, a residential district:
 a. The location and size of such use, the nature and intensity of operations involved in or conducted in connection therewith, its site layout and its relation to access streets shall be such that both pedestrian and vehicular traffic to and from the use and the assembly of persons in connection therewith will not be hazardous or inconvenient to, or incongruous with, the said residential district or conflict with the normal traffic of the neighborhood; and
 b. The location and height of buildings, the location, nature and height of wall [sic] and fences and the nature and extent of landscaping on the site shall be such that the use will not hinder or discourage the appropriate development and use of adjacent land and building, or impair the value thereof.
Section 16.8 of the Ordinance provides:
 16-8 Conditions of Approval. In approving the plans for a particular use, the Commission shall give specific consideration to the design of the following:
 16-8.1 Traffic Access: that all proposed traffic access ways are: adequate but not excessive in number; adequate in width, grade, alignment and visibility; not located too near street corners or other places of public assembly; and other similar safety considerations.
 16-8.2 Circulation and Parking: that adequate off-street parking and loading spaces are provided to prevent parking in public streets of vehicles of any persons connected with or visiting the use and that the interior circulation system is adequate to provide safe accessibility to all required off-street parking.
CT Page 3781
 16-8.3 Landscaping and Screening: that all playground, parking and service areas are reasonably screened at all seasons of the year from the view of adjacent residential lots and streets and that the general landscaping of the site is in character with that generally prevailing in the neighborhood. Preservation of existing trees over 12" in diameter shall be preserved to the maximum extent possible.
 16-8.4 Character and Appearance: that the character and appearance of the proposed use, buildings, and/or outdoor signs will be in general harmony with the character and appearance of the surrounding neighborhood and that of the Town of Enfield and will not adversely affect the general welfare of the inhabitants of the Town of Enfield.
 16-8.5 Impermeable Surfaces and Storm Water Runoff: that wherever appropriate and practicable, all aspects and elements of the site development shall maximize the amount of storm water runoff that can directly precipitate on and percolate into the soil.
 Alternatively, wherever commercial and/or industrial use(s) greatly inhibit natural percolation, said use(s) shall detain all storm water runoff from parking areas and roof drains, for discharge to surface watercourses during and after site development, so as to minimize adverse ground water quality impacts. Mechanisms for this purpose shall be designed to accommodate storm water runoff in amounts up to and including the fifty (50) year, twenty-four (24) hour storm peak discharge.
A careful review of the transcripts of the public hearings discloses that considerable evidence was introduced from expert witnesses with appropriate qualifications[1] concerning the criteria recited in § 16-7 and § 16-8, and a review of that testimony in this decision would be unduly long and tedious. Although Mr. Cybulski might have come to different conclusions concerning that testimony, it is held that there was sufficient evidence before the Commission to allow it to "take into consideration the public health, safety and general welfare, the comfort and convenience of the public in general, and of the CT Page 3782 residents of the immediate neighborhood in particular . . .," as required by § 16-7 and also to allow it to "give specific consideration to the design of . Traffic Access . . . Circulation and Parking . . . Landscaping and screening . . . Character and Appearance . . . was required by § 16-8.
2. Section 16-8.4
Sections 16-8 and 16-8.4, when read together, provide:
 16-8 Conditions of Approval. In approving the plans for a particular use, the Commission shall give specific consideration to the design of the following:
. . .
 16-8.4 Character and Appearance: that the character and appearance of the proposed use, buildings, and/or outdoor signs will be in general harmony with the character and appearance of the surrounding neighborhood and that of the Town of Enfield and will not adversely affect the general welfare of the inhabitants of the Town of Enfield.
Mr. Cybulski argues, concerning § 16.8-4, that one of the access roads (Cybulski Road) to be developed under the permit is adjacent to structures ("historic structures") which are on the National Register of Historic Places, and that the proximity of Cybulski Road to the historic structures will "result in the deterioration of the historic buildings and the destruction of the rural ambience of the district. (Plaintiff's 8-11-93 Brief, p 11)
Letters were introduced at the public hearings opposing the granting of the permit because of concerns about the effect of Cybulski Road on the historic structures. In obvious response to those concerns, and to comments from Town employees, the Commission required that the width of the paved portion of Cybulski Road be narrowed from what was originally proposed in the application. That action by the Commission demonstrates clearly that it gave "specific consideration" to the matters described in § 16-8.4.
Mr. Cybulski also argues that the permit authorizes development of the Lego property which will not be "in general harmony with the character and appearance of the surrounding CT Page 3783 neighborhood and that of the Town of Enfield," as required by § 16-8.4. However, Mr. Cybulski ignores the fact that, while the Commission was required to honor the provisions of §16-8.4, it was also obligated to respect the following commands of § 16-7, § 16-7.3 and § 16-7.3a which, when read together, provide, in relevant part:
 16.7 . . .The Commission shall also consider the following general objectives:
 16-7.3 That, in addition to the above, in the case of any use located in, or directly adjacent to, a residential district:
 a. The location and size of such use, the nature and intensity of operations involved in or conducted in connection therewith, its site layout and its relation to access streets shall be such that both pedestrian and vehicular traffic to and from the use and the assembly of persons in connection therewith will not be hazardous or inconvenient to, or incongruous with, the said residential district or conflict with the normal traffic of the neighborhood . . .
The Lego property, Cybulski Road and the historic structures are all in an industrial district. The eastern boundary of the Lego property is Taylor Road, and the land immediately east of Taylor Road is in a residential district. Accordingly, for purposes of § 16-7.3, the Lego property is "directly adjacent to . . . a residential district . . .", so that the requirements of § 16-7.3a are triggered.
Cybulski Road and the proposed office building are located in the eastern portion of the Lego property, and eliminating access to the proposed office building via Cybulski Road would have the obvious effect of forcing traffic approaching the proposed office building from east of the Lego property to access the proposed office building via Taylor Road. Accordingly, the Commission could properly find that eliminating access to the Lego property from Cybulski Road would increase traffic on Taylor Road and thereby "be hazardous and inconvenient to, or incongruous with, the said residential district or conflict with the normal traffic of the neighborhood", in violation of § 16-7.3a.
In addition, there was sufficient evidence before the CT Page 3784 Commission to allow it to find that the development of Cybulski Road which was authorized by the permit would do no harm to the historic structures.
It is held that the grant of the permit was within the discretion of the Commission and did not violate § 16-8.4.
3. Delegation of Authority To Make Decisions
The Commission established several conditions to its grant of the permit. Mr. Cybulski argues that, in establishing five of those conditions, the Commission improperly delegated to Town employees the authority to make decisions which only the Commission could make. The conditions of which Mr. Cybulski complains are:
 1. Engineering bond in the amount to be determined by the Town Engineer shall be submitted to the Enfield Planning Office prior to the issuance of any Building Permits, or the start of construction, whichever occurs first;
 3. A passbook in the amount to be determined by the Town Engineer to guarantee Erosion and Sedimentation Control measures, shall be submitted prior to the issuance of a Building permit, or the start of construction, whichever occurs first;
 4. A preconstruction meeting between the owner, site contractor, Town staff, utility company representatives, and such other parties as are deemed appropriate, shall be held prior to the start of construction. The "start of construction", for the purposes of these requirements, shall mean the clearing of vegetation;
 5. A Developer's Agreement shall be executed between the town and LEGO Building Corporation, in connection with any public improvements to be made by LEGO. Such Agreement shall be executed by both parties, and submitted to the Enfield Planning Office, prior to the commencement of any public improvements.
 9. Plans shall be amended as necessary, to reflect the final resolution of water service issues. Such resolution shall be made, and plan amendments submitted, prior to the issuance of a Building Permit for the structure.
CT Page 3785
(R, 68)
An engineering bond and passbooks, as called for in conditions 1 and 3, are expressly required by § 16-9, which provides, in relevant part:
 Performance bonds for one hundred percent of the cost of all site engineering and landscaping shall be computed by the Directors of Public Works and Planning respectively and shall be required to be posted in a form approved by the Director of Finance by the applicant prior to application for any building permits for any building developments which requires prior approval under Special Permit or Site Plan Review procedures by the Commission under the provisions of this ordinance. A separate passbook or cashier's check shall be required to guarantee the installation and maintenance of erosion and sedimentation control measures. The Commission shall have the sole authority for release of such required performance bonds, passbook, or cashier's check in whole or in part.
Because conditions 1 and 3 track § 16-9, they are not improper delegations of the Commission's authority.
A preconstruction meeting, as called for in condition 4, is expressly provided for by § 16-16, as follows:
 The Commission may require that prior to the beginning of any site work (including clearing of vegetation, demolition, site grading, etc.), a pre-construction conference be held between the developer, site contractor(s), Town Engineer, Town Planner, and others, as deemed necessary. The purpose of such meeting shall be to review the approved plans and conditions of approval; enhance project coordination; and identify the project's contact person for erosion and sedimentation control concerns. Such conference shall be mandatory for any development which includes either on-site or off-site public improvements.
Because § 16-16 expressly provided for a pre-construction CT Page 3786 conference, and because condition 4 tracks the language of § 16-16, condition 4 is not an improper delegation of the Commission's authority.
A "Developer's Agreement", as called for in condition 5, is expressly required by § 16-18, as follows:
 A Developer's Agreement shall be required for any development which includes on-site or off-site public improvements, which Agreement shall be in a form acceptable to the Town Attorney, and which shall be executed, and may be recorded in the Town Clerk's office, prior to the issuance of a Building Permit.
Because condition 5 is required by § 16-18, it is not an improper delegation of the Commission's authority.
Condition 9 addresses the fact that, at the time the public hearings were closed, Lego had two competing proposals for the provision of water service to the Lego property but had not yet selected the provider. Because the provider had not been selected, engineering plans for the delivery of water had not been submitted to the Commission. In condition 9, the Commission simply made it known that either potential provider was acceptable, and that plans for water service from the provider had to be filed before a building permit would issue. Because plans for water service would have to be reviewed by Town employees before a building permit could be issued, even if the Commission had omitted condition 9, that condition contained no delegations, proper or improper, by the Commission.
It is held that conditions 1, 3, 4, 5 and 9 of the permit contained no improper delegations of the Commission's authority.
4. Reports From Town Employees
Following the close of the public hearings, the Commission received memoranda from three Town employees concerning evidence which had been received at the public hearings. Mr. Cybulski claims that the receipt of those memoranda after the close of the public hearings prevented him, as a member of the public, from responding to the contents of those memoranda, and thereby denied him due process. CT Page 3787
In support of this claim, Mr. Cybulski relies on Carlson v.Fisher, 18 Conn. App. 488 (1989). However, Carlson only holds that evidence cannot be received from an applicant following the close of a public hearing, and leaves intact Connecticut law that, after the close of a public hearing, a zoning agency may receive written and oral comments from staff concerning evidence which was presented at the public hearing. Blaker v. Planning andZoning Commission, 212 Conn. 471, 478 (1989). Accordingly, Mr. Cybulski was not denied due process by the Commission's receipt from Town employees of memoranda concerning evidence which had been introduced at the public hearings.
CONCLUSION
This appeal is denied.
G. Levine, Judge